R. C. GRANQUIST, District Director of Internal Revenue, Appellant,

v.

Squire Earl HARVEY, Appellee.

No. 15529.

United States Court of Appeals Ninth Circuit.

July 14, 1958.

**600**

Charles K. Rice, Asst. Atty. Gen., Melvin Lebow, Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for appellant.

Jacob, Jones & Brown, Eugene E. Feltz, Portland, Or., for appellee.

Before POPE, BARNES and HAMLEY, Circuit Judges.

POPE, Circuit Judge.

Appellee Harvey sued the appellant Director to recover sums which he asserted were wrongfully assessed and collected from him as additional income taxes, penalties and interest for the calendar years 1941 through 1947. The Commissioner's assessment was made February 5, 1954. It was based upon his finding of Harvey's net worth during the period involved here. Included were penalties assessed for fraud. That there were deficiencies for the years in question was conceded, but the case turns upon the question whether there was proof that some part of the deficiencies for the years 1941 through 1944 were due to fraud with intent to evade tax, within the meaning of Sec. 293(b) of the Internal Revenue Code, 1939, 26 U.S.C.A. § 293(b),[1] so that assessment might be made "at any time", as provided in Sec. 276 of the same Code, 26 U.S.C.A. § 276.[2]

Upon trial in the court below the jury returned a special verdict for the defendant Director, finding that in each of these years Harvey filed a false or fraudulent return with intent to evade tax. Harvey moved to set aside the verdict (he had moved for a directed verdict at the close of the evidence) and for judgment in accordance with his motion. The motion was granted and judgment entered awarding Harvey recovery of the sums previously paid by him as additional income tax, penalties and interest for the years 1941 through 1944.[3] The propriety of this action is the sole question presented here.

There was abundant evidence of the deficiencies in income tax for the years in question.[4] What prompted the court's action was its acceptance of Harvey's contention that there was a failure to prove that the deficiencies were due to fraud, and that as a matter of law Harvey could not be found to have filed false

---

1. "§ 293. * * *

  \* \* \* \* \*

  "(b) *Fraud.* If any part of any deficiency is due to fraud with intent to evade tax, than 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)."

2. "§ 276. * * *

  "(a) *False return or no return.* In the case of false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

3. Harvey's action also sought recovery of similar sums paid on account of subsequent years. The motion was for judgment n. o. v. only as to these four years.

4. Taxpayer's true net income was established through proof showing his net worth plus expenditures over the period in question. Taxpayer conceded there were understatements, claiming they were in less amounts, but the jury found the amounts determined by the revenue agents were correct.

or fraudulent returns with intent to evade tax, because the original returns were not produced or their contents proven. The fact was that the taxpayer's returns for the years 1941 through 1944 had been destroyed pursuant to Executive Order and statutory authority. Hence the returns themselves were unavailable.

The court appears to have made its ruling in reliance upon the case of Drieborg v. Commissioner, 6 Cir., 225 F.2d 216, 219. There the Tax Court had found that the taxpayer's returns were false and fraudulent. Reversing the Tax Court the court held that the "Commissioner failed in his proof of any such fact for the simple reason that the returns were not in evidence, nor was there any evidence as to what information the returns contained." The court quoted with approval a similar statement in an earlier Tax Court case as follows: "For without them we are unable to ascertain what income petitioner reported or that any of his income was omitted. Even though the tax paid was small, inability to examine the returns precludes the possibility of eliminating from consideration legitimate offsetting deductions in large amounts."

We think the facts of this case require a different result. Here the contents of the missing returns was established to the extent necessary to show the amount of the omissions and what was omitted. Because the number of taxpayer's exemptions was known, the tax rate was fixed, and the tax paid was proven, the amount of net income in the returns was calculated precisely. Also produced were his Oregon state returns for the same years, which showed substantially the same net income as that thus reconstructed, and how it was arrived at.

The taxpayer himself testified as to what items of income were included in these returns. His business was that of operating taverns. Reported in the returns were receipts from sale of merchandise and beer, from music boxes and from pinball and other games. Not reported were receipts from transactions in the buying and sale of automobiles and receipts from punchboards. As for the punchboard receipts it appeared that they were substantial, and that the amounts received were all net profit, and subject to no deductions. Taxpayer testified that because of his poor health he could not procure insurance upon his life, and hence he was very anxious to accumulate savings in the form of Government bonds, and every month he paid $375 for such a bond, using money received from the punchboards. These receipts were not recorded in his books, nor reported in his income tax returns.

It is thus apparent that there was sufficient evidence as to what the returns contained. True, it was secondary evidence, but we know of no rule excluding the use of such evidence to prove the contents of a destroyed or lost return just as in the case of any other document where the original is unavailable. Even more important is the fact that the taxpayer himself testified as to substantial income from this source in each of these years which was not reported. Important here is what the returns *did not contain*.

The defendant Director adequately sustained his burden of proof that the failure to report this income was done knowingly and fraudulently, and with intent to evade tax.[5] The penalties were collectible if "any part of any deficiency" was due to fraud. In our view the proof of fraud was clear and convincing, and the motion for judgment in Harvey's favor should not have been granted.

The judgment is reversed and the cause is remanded with directions to enter judgment for the appellant.

5. Harvey's testimony was such as to warrant the inference that he knew the punchboard profits were reportable income and that he omitted them in order to evade taxes. He had made extra-judicial admissions to the revenue agents that his failure to report this income was dishonest, saying "I cheated on my returns on all the years."