**Harrison L. PUTMAN and Rilla B. Ripley, Administratrix of the Estate of Goldie A. Putman, Deceased, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 14592.

United States Court of Appeals Sixth Circuit.

April 10, 1962.

Robert Kniffin, Toledo, Ohio (Robert B. Gosline, Schumaker, Loop & Kendrick, Toledo, Ohio, on the brief), for appellants.

Arthur E. Strout, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Merle M. McCurdy, U. S. Atty., on the brief), for appellee.

Before O'SULLIVAN, Circuit Judge, BOYD and THORNTON, District Judges.

BOYD, District Judge.

This appeal is from a judgment of the District Court dismissing taxpayer appellants' complaint in which they sought to recover tax deficiencies, fraud penalties and interest for the years 1942 to 1954. Assessments in the total sum of $125,838.52 were made by the Commissioner of Internal Revenue and paid by the taxpayers after which the suit herein was filed to recover same.

Taxpayers Harrison L. Putman and Goldie A. Putman were husband and wife during the years here involved. Rilla B. Ripley, their daughter, is the Administratrix of the Estate of Goldie A. Putman, who died in 1955. The Putmans lived on their farm near Rockford, Mercer County, Ohio. In addition to the farm on which they resided, they had other farming and business interests in adjoining Van Wert County, Ohio.

This appeal relates only to the years 1942 through 1946 for which appellants, to reverse the District Court, claim that since neither the tax returns for these particular years, which had been destroyed in accordance with Sections 366 to 374, U.S.C.A., Title 44, nor any secondary or independent proof of the actual contents of such returns is in evidence, the Government failed in the trial court to sustain its burden of proving that the taxpayers filed false and fraudulent returns for these years, and therefore, the assessments for such are barred by the statute of limitations, Title 26, Sec. 275 (a) Internal Revenue Code of 1939. The government, on the other hand, contends there is adequate evidence in the record to sustain the District Court's judgment. The additional taxes, penalties and interest assessed by the Commissioner for these years in question is in the sum of $50,368.22.

In 1956 the agents of the Internal Revenue Service, finding the books and records of the taxpayers to be wholly inadequate, reconstructed the net income of the Putmans for all of the years 1942 through 1954 by the net worth and expenditures method which resulted in the deficiency assessments herein above stated. Taxpayers do not take issue on this appeal with the determinations of the Commissioner thus arrived at, and the resulting tax deficiencies. They, in effect, concede their failure to overcome the presumptive correctness of the Commissioner's determinations. However, such failure on the part of the taxpayers does not create a presumption of fraud. Drieborg v. Comm., C.A. 6th, 1955, 225 F.2d 216.

The parties stipulated that back taxes for the years 1942 to 1946, inclusive, can be assessed and collected only if it is established that the tax returns for such years were false or fraudulent and were made with the intent to evade taxes, all within the meaning of Sec. 276 (a) of the Internal Revenue Code of 1939. It is well established in the law that the fraud charged must be proved by clear and convincing evidence. This is the burden of the Commissioner in this case. Kashat v. Comm., C.A. 6th, 1956, 229 F. 2d 282.

For the years 1942 through 1946 in which the returns were not available the Internal Revenue Service determined the increase in income and taxes due by reconstructing the contents of such returns through the use of reverse computations in conjunction with the net worth method. As we see it on the record before us, the only secondary or independent evidence of the contents of the missing returns is the amount of tax paid as reflected by the collector's assessment list, Form 899, for each of the years in question. While the Commissioner using this figure has attempted to reconstruct the contents of the original missing returns, specifically, there is no secondary or independent proof in the record as to the number of exemptions claimed in such returns, no proof as to whether the standard 10% deductions were taken or the deductions itemized. Neither actual net income nor gross income as shown in the orginal returns was supplied. There is no proof of gross receipts which were or were not entered in the original returns or the kinds and amounts of deductions from gross income.

The case before the Court presents an analogous factual situation which to us appears to be indistinguishable from Drieborg v. Comm., supra. In Drieborg this Court said that the Commissioner could not sustain his burden of proof of fraud

"* * * for the simple reason that the returns were not in evidence, nor was there any evidence as to what information the returns contained. The Commissioner showed only that the Collector's records indicated that the petitioner husband had paid certain amounts in taxes for those years. Nowhere in the record is there any evidence of the gross or net income reported, nor of the credits or deductions either claimed by the taxpayer or allowable to him."

■■ Since each case of this nature must rest on its own factual basis, the key to our decision is to be found in the recorded testimony. Granquist v. Harvey, C.A. 9th, 1958, 258 F.2d 599, 601. The failure of the government in this fraud case to sustain its burden of supplying secondary or independent evidence of the contents of the original returns is implicit in the testimony of the government agent, Herbert E. Palm.[1]

It should be noted that the court below, while correctly sustaining the deficiency assessments of the Commissioner for all of the years involved, incorrectly placed the burden of proof upon the taxpayer with regard to the fraud issue for the years 1942 through 1946. The trial judge after first stating his concern relative to the tax years 1942 to 1946, inclusive, and his opinion that the Government had introduced ample secondary evidence of the contents of the missing returns to take this case out of the Drieborg rule concluded by saying:

"It appears to us, from the record, that the reconstructed net income has not been seriously or adequately challenged by the plaintiff sufficient to sustain his burden of proof."

This is clearly erroneous as the burden is upon the Government in a case of this type to prove fraud for all years in question, including years for which the original returns are not available. Title 26 U.S.C.A. § 1112, Internal Revenue Code of 1939.

---

1. "The Court: Now, taking that form (Form 899) and taking into consideration his exemptions he was entitled to for those years, you worked back and figured what his gross and net income was, is that correct?

"A. You cannot compute his gross, but you can compute his net income for those years. In other words, the income he paid tax on.

    *      *      *      *

"Q. (By Plaintiff's counsel) Now, how about your Form 899?

"Q. Does that state the net income?

"A. It does not state the net or the gross; it just states the taxes paid.

"Q. Do you have any other record showing the net income disclosed by the returns for those five years?

"A. No.

"Q. So that it is a recomputation then that you have here for those five years? I refer to the net income for those five years?

"A. That would be correct?

    *      *      *      *

"* * * (Q.) Now, would that reconstruction depend upon taking the standard deduction as distinguished from itemizing contributions, medical expenses, and the like?

"A. Yes; it would affect net income.

"Q. So that your recomputation could be wrong here, couldn't it?

"A. Had the taxpayer itemized it, I would have to say it could be wrong as far as the income per return.

"Q. If you mistook the number of exemptions he was entitled to your recomputation would be wrong, too, wouldn't it?

"A. Well, if he had more or less exemptions than I allowed it would be wrong, that is correct.

  *    *    *    *    *

"Q. Then the answer is that a net worth statement does not disclose gross income at all, does it?

"A. Not specifically, no.

"Q. Now, to get back to the question. Did you make any determination of gross income for the years 1942 through 1946?

"A. No, I did not.

"Q. We have as an exhibit the tax returns for the years,—that is, 1947 and future years to which are attached farm schedules setting forth gross receipts such as grain, milk and the like.

"Do you have any showing of what the taxpayers' gross receipts from grain, milk and such items were in the returns from the years 1942 through the year 1946?

"A. I do not.

"Q. Do you have any determination of what his deductible farm expenses for those years as set forth in the returns were?

"A. Are you speaking of dollar amount?

"Q. Items and amounts.

"A. I do not.

"Q. So that those returns could have very properly listed his gross income, couldn't they?

"A. They could have.

"Q. Those returns could also have very properly listed his deductible expense, couldn't they?

"A. They could have listed his deductible expenses."

The "secondary evidence" referred to by the trial judge is nothing more than the "reverse computation" procedure relied upon by the Commissioner in Drieborg, supra. Such consists of computing in a reverse manner from the amount of tax shown to have been paid, the maximum number of exemptions apparently allowable, the assumption that the standard deduction was taken, and the computation of net income using the applicable tax rates. These computations are not evidence of what the original returns actually contained, but are only reconstructions of what the Commissioner concluded the returns should have contained. It stops at the determination of net income and omits any showing of gross receipts and expenses deducted as actually reported in the original returns.

■ By way of clarification, it should be noted that while these efforts of the Commissioner to demonstrate deficiencies for the years in question are appropriate to establish an understatement of taxes due and owing, such are not a substitute for the required secondary or independent evidence to establish fraud in the missing tax returns.

It should be stated further that the Government in support of the "reverse computation" method herein relies upon the fact that there were no inheritances, gifts, loss carry-overs or loss carry-backs. The elimination of such items is not proof of what was actually set forth in the returns, but only of what the Commissioner concluded the returns did not contain. These same facts were established in Drieborg and are considered only in connection with the net worth computations. They in no sense constitute secondary or independent evidence of the actual contents of the returns. Here the record is completely barren of any secondary or independent evidence of the actual contents of the missing returns so necessary to remove the case from the rule announced in the Drieborg case.

Cases relied upon by the Government herein include Granquist v. Harvey, 258 F.2d 599, C.A. 9th, 1958, and Samkoff v. Comm., 1957, P-H TC Memo.Dec. para. 57,123. Both are clearly distinguishable from the case before this court.

In the Granquist case the Commissioner made the usual reverse computations, but he also had the benefit of the taxpayer's Oregon state tax return to support his computations. Such proof constituted sufficient independent or secondary evidence of the contents of the original returns. Further, and even more important, was the fact that the taxpayer himself testified as to substantial income in each of the years in question which was not reported. No such additional evidence is present here. The Samkoff case, supra, is distinguishable as in that case an accountant's copy of the original tax return was introduced as evidence of the contents of such original return.

■ The elements of suspicion of fraud, proof of fraud for other years, and a consistent and substantial understatement of income over several consecutive years, though all persuasive (cf. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150) are not substitutes for the original tax returns or independent evidence of their actual contents, since it is the return itself which is the basis of the imposition of a fraud penalty. Drieborg v. Comm., supra. Here these elements are present but as in Drieborg no evidence was introduced to enable the Government to sustain its burden of proving fraud for the years here in question so as to remove the bar of the statute of limitations.

The judgment of the district court is reversed insofar as it is based upon a finding of fraud for the years 1942 to 1946, inclusive. The case is remanded to the district court for further proceedings consistent with this opinion.