KENT HOMES, INC., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4456-68—4459-68, 4536-68. Filed February 25, 1971.

---

[1] Cases of the following petitioners are consolidated herewith: Alton K. Blosser and Esther Blosser, docket No. 4457-68; Marshall E. Blosser and Mary C. Blosser, docket No. 4458-68; Alton K. Blosser, Jr., and Ruth Blosser, docket No. 4459-68; and Max L. DeFrance and Bonnie J. DeFrance, docket No. 4536-68.

*Barney J. Heeney, Jr.*, and *Howard A. Spies*, for the petitioners.
*Edward G. Lavery*, for the respondent.

TANNENWALD, *Judge:* Respondent determined the following deficiencies in petitioners' income taxes:[2]

| Taxpayer | Year | Deficiency |
| --- | --- | --- |
| Kent Homes, Inc. | Feb. 1, 1958 through Jan. 31, 1959 | $69, 980. 31 |
| Alton K. Blosser and Ester Blosser | 1963 | 19, 062. 77 |
| Alton K. Blosser, Jr., and Ruth Blosser | 1963 | 12, 951. 42 |
| Marshall E. Blosser and Mary C. Blosser | 1963 | 13, 396. 55 |
| Max L. DeFrance and Bonnie J. DeFrance | 1963 | 13, 899. 41 |

Overpayments in income taxes are claimed by individual petitioners as follows:

| Taxpayer | Year | Amount |
| --- | --- | --- |
| Alton K. Blosser and Ester Blosser | 1963 | $2, 164 |
| Alton K. Blosser, Jr., and Ruth Blosser | 1963 | 1, 476 |
| Marshall E. Blosser and Mary C. Blosser | 1963 | 1, 405 |
| Max L. DeFrance and Bonnie J. DeFrance | 1963 | 1, 505 |

The initial issue for determination is whether Kent Homes, Inc. (hereinafter sometimes referred to as the corporation), realized gain in the amount of $314,118.14 in its taxable year ended January 31, 1963 (includable in the income of the individual petitioners by virtue of a subchapter S election), as a result of the condemnation of a Wherry military housing project. Alternative issues are:

(1) Whether the corporation realized gain in the amount of $279,921.23 from the condemnation in its taxable year ended January 31, 1959.

---

[2] Kent Homes, Inc., reported its income on the accrual basis and closed its taxable year on January 31 of each year. The individual petitioners reported their income on the cash basis, using the calendar year as their reporting period.

(2) If gain was realized in fiscal 1959, whether, notwithstanding the fact that the statute of limitations provided by section 6501 [3] has expired, an adjustment in that year is authorized under sections 1311–1315, inclusive.

(3) Whether the gain and interest income arising from a deposit made by the United States on December 18, 1961, was properly reportable for income tax purposes in the corporation's taxable year ended January 31, 1963, and therefore includable in the income of the individual petitioners by virtue of a subchapter S election.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioner Kent Homes, Inc., is a Kansas corporation whose principal place of business was located at Topeka, Kans., at the time it filed its petition in this case. It timely filed Federal income tax returns on the accrual basis for the taxable years ended January 31, 1958, and January 31, 1959, with the district director of internal revenue at Wichita, Kans. The return for fiscal 1959 was filed on April 13, 1959. The corporation validly elected to be taxed as a small business corporation under subchapter S of the Internal Revenue Code of 1954 for the taxable year beginning after January 31, 1962, to wit, February 1, 1962, to January 31, 1963, and filed a Federal Small Business Corporation Return of Income for that period with the district director of internal revenue at Wichita, Kans.

Petitioners Alton K. Blosser and Esther Blosser, husband and wife, had their legal residence in Raytown, Mo., at the time they filed their petition in this case. They timely filed a joint Federal income tax return for the taxable year 1963, as did the other individual petitioners.

Petitioners Marshall E. Blosser and Mary C. Blosser, husband and wife, and petitioners Alton K. Blosser, Jr., and Ruth Blosser, also husband and wife, had their legal residences in Topeka, Kans., at the time they filed their respective petitions in this case.

Petitioners Max L. DeFrance and Bonnie J. DeFrance, husband and wife, had their legal residence in Leavenworth, Kans., at the time they filed their petition in this case.

At all relevant times after October 16, 1961, the stock of Kent Homes, Inc., was owned as follows:

---

[3] All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended.

| Stockholders | Number of shares |
|---|---|
| Alton K. Blosser | 392 |
| Alton K. Blosser, Jr. | 336 |
| Marshall E. Blosser | 336 |
| Bonnie J. DeFrance | 336 |

In 1951, under the Wherry Military Housing Act, the corporation and others constructed and operated single-dwelling rental houses located at Fort Leavenworth, Kans., for military personnel assigned to the installation there. The houses were built upon land leased by the corporation from the Secretary of the Army for a 75-year term. To finance its portion of the construction, the corporation gave a note secured by a mortgage on the houses to the Prudential Investment Co. Such note and mortgage were subsequently assigned to the New York Life Insurance Co. (hereinafter sometimes referred to as N.Y.L.I.C. or the mortgagee). The note was insured by the Federal Housing Administration (FHA).

On December 18, 1957, the U.S. Department of the Army commenced condemnation proceedings in the U.S. District Court for the District of Kansas against the equity of the corporation in the Wherry project under the terms of the Capehart Act, 42 U.S.C. sec. 1594a(b). On the same day, the Department of the Army deposited a U.S. Treasury check in the amount of $137,000 with the District Court. Of this amount, $83,000 represented the Department's estimate of the fair market value of the corporation's equity in the Wherry project.

Effective January 1, 1958, the District Court ordered possession of the Wherry project transferred to the Department of the Army. After that date, the United States made the payments on the mortgage note. On February 14, 1958, the corporation made application to the District Court for withdrawal of the $83,000. On March 19, 1958, the $83,000 was paid to the corporation.

An agreement (hereinafter called the three-party agreement) was negotiated among the Department of the Army, the Federal Housing Administration, and the New York Life Insurance Co. The agreement provided that the Department of the Army assumed the obligation of the corporation's note and mortgage. A provision releasing Kent Homes, Inc., from all further liability and obligation under said mortgage and the note secured thereby was deleted by drawing lines through the provision. In the same agreement, the mortgagee waived its claim to the condemnation proceeds. The agreement became effective in March 1958, when it was signed and acknowledged by the parties to it. As for the $83,000 deposit, the parties have stipulated that it should be taken into account for tax purposes on the date it was received, March 19, 1958.

The corporation disagreed with the Department of the Army's determination of the fair market value of the corporation's equity in the Wherry project and also contended that the Department could not condemn an equity. Commissioners were appointed to hear the case and make a report to the District Court.

On August 29, 1961, the commissioners issued their report and determined the value of the equity in the Wherry project to be $308,030. This amount included the value of the interest held by Marshall Homes, Inc., a related corporation which was also a party to the condemnation proceedings. The commissioners' report also examined the question of whether the equity value could be separated and condemned separate and apart from the mortgage value of the real estate. Insofar as the question affected Kent Homes, Inc., however, the commissioners dismissed it as being "from a realistic standpoint, of little importance."

On December 18, 1961, the Department of the Army deposited a U.S. Treasury check in the amount of $230,400.50 with the District Court, representing the deficiency determined by the commissioners with respect to the property of both Kent Homes, Inc., and Marshall Homes, Inc., plus interest thereon. The American Irving Savings Bank (mortgagee of Marshall Homes, Inc.'s interest in the Wherry project) claimed that it was entitled to be paid the full amount of its mortgage and that the Government was obligated to deposit the full amount of the award. The U.S. Department of Justice, which represented the Government in the condemnation proceedings, opposed the release of the deposit until the question of mortgagee interest was settled. An "Application for Disbursement" was filed by Kent Homes, Inc., and an "Order for Disbursement" of the deposit was entered by the District Court on May 23, 1962. Payment to the corporation was made at that time. The order contained the written approvals of the various parties in interest.

On September 7, 1962, the District Court issued a memorandum opinion reviewing the commissioners' report and approving the valuation as determined therein. The court went on to conclude that, since the three-party agreement did not release the mortgagors from all further liability under the note and mortgage, condemnation of the equity would not justly compensate them and that the condemnation proceedings should include the entire gross estate. It remanded the matter to the commissioners with directions to "make further findings and conclusions and arrive at the amount of judgment chargeable to the plaintiff [the Government] for the entire gross estate."

An agreement entitled "Supplemental Agreement," dated September 26, 1962, and notarized on October 11, 1962, was entered into between Kent Homes, Inc., and the New York Life Insurance Co.,

whereby the corporation was formally released from any further liability under the note and mortgage relating to the Wherry project.

The parties have stipulated that Kent Homes, Inc., realized gain in the amount of $314,118.14 from the condemnation of its interest in the Wherry military housing project. The respondent determined that $279,921.23 of the aforesaid gain was realized by and taxable to the corporation in its taxable year ended January 31, 1958, and, accordingly, proposed an adjustment in such amount, thereby increasing the corporation's taxable income and tax liability for that year. A statutory notice of deficiency was issued in accordance with the foregoing and the amount of the deficiency ($69,980.31) was paid by the corporation. The corporation made a timely claim for refund of said amount and, upon its rejection, instituted a suit for refund in the U.S. District Court for the District of Kansas.

The trial before the District Court was held on April 16, 1965. In the course of opening statements, the following colloquy took place among Mr. Spies, the counsel for Kent Homes, Inc., Mr. Miner, counsel for the United States, and the court:

MR. SPIES. Okay, Your Honor. Now there is one further point I want to make in opening statement, that gain we admitted will show a gain on the condemnation proceeds and we have no quarrel with paying any tax on it, but we want to pay the tax at the time that the tax should be due, because there is an interest factor involved here.

Now, we believe they will show there is gain in the fiscal year ended 1-31-58, and in the interest of justice and avoiding a multiplicity of suits on the same condemnation award in the event the Court should determine there is no gain for the fiscal year ended January 31, 1958, we are asking the Court to determine when the gain is, or will be reportable so we can pay the taxes due on the gain and get the matter concluded without yet another lawsuit or possibly two or three more lawsuits on the same facts.

With that I conclude my opening statement.

THE COURT. I am inclined to think you stated this, I want to be certain, this taxpayer was, during all this time, on accrual basis?

MR. SPIES. That is correct, Your Honor, that is stipulated.

MR. MINER. May it please the Court. First, I would like to say that I am not just sure here from what has been cited, we have an issue, a statute of limitations issue pleaded in this, and I am not sure whether that issue is now being conceded or not. I think we should decide whether—

MR. SPIES. Your Honor, we concede that—We want the Court to find—we will concede it to any year, we will pay the tax, there is a question of the statute of limitations involved in the case, but we will pay the tax. We don't believe that we have to pay it in the year they state, or possibly in the next year they might try to put it on, but we will concede the statute of limitations case if the Court can find in what year this is reportable and we will report it and pay the tax on it.

THE COURT. Well, so I am clear, it is not—I haven't read the Answer, it is not the contention of the Government that this claim is barred by the statute of limitations?

Mr. MINER. No, sir. We are not contending that, the taxpayer contended that our assessment was barred by the statute of limitations.

THE COURT. Well, he says now they're not going to raise this.

MR. SPIES. We are not trying to avoid the tax on it at all.

Mr. MINER. That takes care of quite a bit of what I had to say.

On November 13, 1967, the District Court issued its opinion (per Templar, *J.*), which is reported as *Kent Homes, Inc.* v. *United States*, 279 F. Supp. 650 (D. Kan. 1967). Judge Templar, in holding for the plaintiff corporation and against the defendant, the United States of America, for $69,980.31, plus interest, said:

The effective date of the three-party agreement insofar as it bears on the question of accrual of the [$83,000.00] deposit was March 1958. The assumption of the mortgage by the Army did not occur earlier than February 1958 and the withdrawal of the deposit was contingent upon the execution of the agreement. * * *

The Court concludes that the gain resulting to the plaintiff was never determined or available to it in fiscal 1958 and by reason of the facts found herein was properly taxable in fiscal 1959. [*Kent Homes, Inc.* v. *United States, supra* at 660.]

The allegations in the complaint filed by Kent Homes, Inc., in the District Court case merely asserted that no gain was realized in 1958. At the trial and on brief, it argued that no gain could be realized with respect to the mortgage and the mortgage note until it was released from all liability thereon and that, since this did not occur until sometime in its fiscal year 1963, it was not until that year that the rights and interests of the various parties to the condemnation proceedings were sufficiently determined to require it to recognize any gain from the condemnation. (With respect to the $83,000 deposit, Kent Homes, Inc., argued that it was not received until fiscal year 1959 and could not be taken into account to reduce basis until that year.) Although Kent Homes, Inc., never specifically argued that fiscal 1959 was the proper year for realization of any gain with respect to the mortgage and the mortgage note, it did contend, both in its complaint and at the trial and on brief in the prior case, that the effective date of the three-party agreement, wherein the corporation was relieved of primary liability, was in fiscal 1959. The judgment of the District Court became final on February 29, 1968.

On June 19, 1968, the respondent mailed a notice of deficiency to the corporation, in which he determined a deficiency of $69,980.31, based on his assertion that $279,921.23 of the gain, which was in issue in the 1958 tax case, was realized by and taxable to the corporation in its taxable year ended January 31, 1959. Docket No. 4456–68 involves the corporation's petition for a redetermination of that deficiency.

On June 20, 1968, the respondent mailed notices of deficiency to each of the individual petitioners. Therein respondent asserted that the

entire $314,118.14 gain from the condemnation of the Wherry project was realized by the corporation in the fiscal year ended January 31, 1963 (during which year the corporation was an electing small business corporation), and was to be included in computing the distributive shares of the corporation's taxable income which were taxable to the individual petitioners in their taxable year 1963.

Kent Homes, Inc., in its return for the taxable year ended January 31, 1963, reported gain from the condemnation in the following manner:

| | | |
|---|---:|---:|
| Proceeds of condemnation | | $1,402,517.91 |
| Costs of assets | $1,406,122.73 | |
| Less depreciation reserve | 390,682.05 | |
| | 1,015,440.68 | |
| Costs allocated to condemnation trial and proceeding | 72,959.09 | 1,088,399.77 |
| Total gain | | 314,118.14 |
| Less gain taxed in year ended 1/31/58 per R.A.R. dated 5/31/62 [1] | | 279,921.23 |
| Remaining gain on involuntary conversion | | 34,196.91 |

[1] Additional Federal income tax for 1958 in the amount of $69,980.31 was assessed in 1962 and paid under protest. Suit for refund is presently pending in U.S. District Court.

The gain of $34,196.91 was completely eliminated by a capital loss of $38,905.

In its return for fiscal 1963, Kent Homes, Inc., also reported interest income from the condemnation in the amount of $27,648.06.[4]

The corporation did not report any part of the gain from the condemnation in any of its Federal income tax returns, nor did it otherwise pay any tax with respect thereto, for the taxable years ended January 31, 1959, through January 31, 1961.[5]

### OPINION

Section 1001(a) of the Internal Revenue Code provides that the gain from any sale or other disposition of property "shall be the ex-

[4] In the individual petitions, it is claimed that such interest income in the amount of $27,689.07 was reported by the corporation. We have no evidence to explain this larger amount, with the result that we have accepted the figure used by respondent.

[5] On Mar. 25, 1964, the respondent mailed a notice of deficiency to the corporation in which respondent asserted that $34,196.91 of the gain from the condemnation was realized by, and taxable to, the corporation in the taxable year ended Jan. 31, 1962. Respondent also asserted that the corporation received interest income in the amount of $27,648.06 from the U.S. Government (Department of the Army) on Dec. 18, 1961. The corporation paid the deficiency as determined by respondent and has filed a suit for refund in the U.S. District Court for the District of Kansas: Kent Homes, Inc. v. United States of America, No. T-4499. Individual petitioners reported their respective shares of these amounts in their 1963 Federal income tax returns and are claiming herein overpayments with respect to the taxes paid thereon.

cess of the amount realized therefrom over the adjusted basis." For capital gains purposes, involuntary conversions such as condemnations are treated as "sales or exchanges" under the statute. *Kieselbach* v. *Commissioner*, 317 U.S. 399 (1943) ; *Hawaiian Gas Products* v. *Commissioner*, 126 F. 2d 4 (C.A. 9, 1942) ; *Adolph K. Feinberg*, 45 T.C. 635, 640 (1966), affd. 377 F. 2d 21 (C.A. 8, 1967). The question herein is not whether but *when* the gain of $314,118.14 was realized. In answering that question, we must address ourselves to two elements: (a) The portion of the gain, in the amount of $279,921.23, attributable to the unpaid balance of the mortgage at the time of condemnation and (b) the balance of the gain, in the amount of $34,196.91. Also involved is the year of taxability of interest income arising from the condemnation in the amount of $27,648.06.

### Gain Attributable to the Unpaid Balance of the Mortgage

It is well established that gain can be realized from a condemnation even though litigation as to the total amount to which the condemnee may be entitled has not been terminated. *Conlorez Corp.*, 51 T.C. 467 (1968) ; *Estate of Jacob Resler*, 17 T.C. 1085 (1952). Respondent does not contend otherwise but asserts that, because Kent Homes, Inc., was not formally released from its obligation on the mortgage note until its fiscal year ending January 31, 1963, the entire gain attributable thereto is not includable in the corporation's income before that year.[6] Alternatively, respondent argues that the portion of the gain attributable to the assumption of the mortgage note should be taxable in fiscal 1959. Petitioners assert that, with respect to the portion of the gain attributable to the assumption of the mortgage note, fiscal 1963 is not the proper year. In accordance with respondent's alternative position, they argue that such portion of the gain was realized at the time the mortgage note was assumed in March 1958 and therefore is includable in its income for the taxable year ending January 31, 1959.

In *Kent Homes, Inc.* v. *United States*, 279 F. Supp. 650 (D. Kan. 1967), the District Court held that the portion of the gain in the amount of $279,921.23, attributable to the unpaid balance of the mortgage at the time of condemnation, was not realized by the corporation in its 1958 fiscal year. Neither party in the instant case has argued that fiscal 1958 is the proper year, presumably because of the effect of the District Court's determination. See generally Scott, "Collateral Estoppel by Judgment," 56 Harv. L. Rev. 9 (1942). Due to the posture

---

[6] To the extent that gain and interest income was realized in fiscal year 1963, the parties agree that it is includable in computing the distributive shares of the corporation's taxable income taxable to the individual petitioners in their taxable year 1963, since the corporation had validly elected to be taxed as a small business corporation under subchapter S of the Internal Revenue Code of 1954 for taxable years beginning after Jan. 31, 1962.

of this case, we are not faced with the same question that was presented to this Court in *T. Jack Foster*, T.C. Memo. 1966–273, modified and remanded by *Likins-Foster Honolulu Corp.* v. *Commissioner*, 417 F. 2d 285 (C.A. 10, 1969). See also pp. 829–831, *infra*. Rather, the issue before us is whether the assumption of the mortgage note in fiscal 1959 triggered the realization of a portion of the gain attributable to the note in that year or whether such portion of the gain was not realized until the execution of a formal release in fiscal 1963.

With one exception noted below, the courts have held that the unpaid balance of a mortgage should be included in the proceeds of a taxable sale or exchange for the purpose of determining gain, at the latest, when the obligation has been assumed. In such holdings, the impact of an absence of a complete release of the mortgagor has either been ignored or held to be immaterial.[7] *Crane* v. *Commissioner*, 331 U.S. 1 (1947) ; *Smith* v. *Commissioner*, 324 F. 2d 725 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court; *Oates* v. *United States*, an unreported case (N.D. Tex. 1969, 24 A.F.T.R. 2d 69–5628, 69–2 U.S.T.C. par. 9658).[8]

The rights and interests of the parties herein are determined by the laws of the State in which the real estate is situated, in this case Kansas. *Helvering* v. *Stuart*, 317 U.S. 154, 162 (1942) ; *United States* v. *Akin*, 248 F. 2d 742 (C.A. 10, 1957). Under the law of Kansas, the U.S. Government became a primary obligor when it assumed the mortgage and, as between it and Kent Homes, Inc., the corporation became secondarily liable. *Morlan* v. *Loch*, 95 Kan. 716, 149 P. 431 (1915). Moreover, under Kansas law, the corporation could have recovered from the U.S. Government the amount of any deficiency judgment against it prior to payment. *Morlan* v. *Loch, supra.*

Under these circumstances, we see no reason to import herein any exception to the foregoing general rule as to includability of an assumed mortgage simply because the formal release of Kent Homes, Inc., may have been delayed until its fiscal year 1963.

Respondent claims that its position is supported by *Likins-Foster Honolulu Corp.* v. *Commissioner*, 417 F. 2d 285 (C.A. 10, 1969), modifying and remanding *T. Jack Foster*, T.C. Memo. 1966–273. That case, like the instant one, involved a condemnation by the United States of the equities of several corporations in their Wherry projects.

---

[7] Since we are not confronted herein with any question of loss to the transferor, we need not decide whether the same rule applies in determining loss. See *Frank R. Southers,* T.C. Memo. 1970–242.

[8] See also *Poplar Hills Development Corp.,* T.C. Memo. 1968–208. There is a suggestion in *Oates* v. *United States* that solvency of the purchaser may be a factor but it seems clear (and respondent has made no argument to the contrary) that the U.S. Government would satisfy any standard in this regard.

The circumstances surrounding the condemnation of the equity belonging to the Likins-Foster Ord Corp. (Ord) are very similar to those involved herein. As to Ord, a complaint in condemnation and a declaration of taking were filed on November 1, 1957, in a U.S. District Court, and a deposit of $463,226 was made as estimated just compensation. On that date, a deed of trust and chattel mortgage against the property were held by N.Y.L.I.C. The principal amount due on the mortgages was $4,017,879.35. Ord had an adjusted basis in the property of $3,342,983.40. Before the end of the calendar year 1957, the United States took possession of the Wherry project.

Thereafter, N.Y.L.I.C., the Department of the Army, and the FHA entered into a three-party agreement; the last signature thereon bore an acknowledgement date in March 1958. Article II of the three-party agreement is nearly identical to article I of the three-party agreement in the instant case. Each article had the same words stricken from it.

In its opinion, the Court of Appeals stated:

Although the right of the mortgagors to have the Government take over the mortgage obligations existed from the condemnation of the equities, there was no assumption of their mortgage obligations until the agreements were made and resulting gains to the mortgagors did not occur until there was an assumption and a release of their obligations on the mortgages. [See 417 F. 2d at 290.]

Later, in the appendix to the opinion, the Court of Appeals concluded:

In view of the deleted language concerning the release of the mortgagor, Ord, we doubt that we should now hold as a matter of law that the agreement alone released Ord. We feel instead that we should leave this determination to be made first by the Tax Court on remand. There, the agreement and all the facts may be considered and the determination made from the record as to when an effective release of Ord by the mortgagee occurred, and thus, when a gain by discharge of the mortgage indebtedness may have resulted. [Id. at 295.]

It is obvious that the Court of Appeals did not actually determine that the gain attributable to the unpaid balance of the mortgage was not realized until the year that Ord was formally released from any further possible liability, whether as primary obligor or surety. The tenth Circuit's opinion does not clearly indicate whether its requirement of an effective release pertains to the release from primary liability which is the normal consequence of the assumption of a mortgage or goes beyond that and refers to a release from any contingent liability that Ord might have had as surety. It appears that the Court was concerned with the question of whether the deletion of the lines releasing Ord "from all further liability and obligation under said mortgage and the note secured thereby" operated to negative the effect of the assumption of primary liability which preceded it. In light of the foregoing, we do not consider the position of the Tenth Circuit

to be so clear as to require the application of our decision in *Jack E. Golsen*, 54 T.C. 742 (1970), on appeal (C.A. 10, May 4, 1970).[9]

In the usual situation, it is respondent who is contending that gain should be includable in income at the earliest date consistent with the accepted principles of taxation. His reason for urging that we ignore the general rule for treatment of assumed liabilities (compare section 357 and the regulations thereunder) [10] appears to stem from his fear that fiscal year 1959 of Kent Homes, Inc., may be closed to assessment by the running of the period of limitations.

We hold that the date of the formal release of Kent Homes, Inc., is immaterial and that, on the facts of this case, the unpaid balance of the mortgage note, to the extent that it exceeded adjusted basis, was income to Kent Homes, Inc., in its fiscal year 1959.[11]

### *Fiscal Year 1959 and the Period of Limitations*

Having decided that $279,921.23 of the gain from the condemnation of the Wherry project was taxable to Kent Homes, Inc., in its fiscal year 1959, we now must face the issue as to whether an adjustment to the income of the corporation for that year is authorized under sections 1311 through 1315, so as to remove the bar of section 6501. Respondent has conceded that the period of limitations provided by section 6501 has expired as to the fiscal year 1959. Petitioner Kent Homes, Inc., did not include such gain in its return for fiscal year 1959 nor did it otherwise pay a tax with respect thereto for that year.

Both parties are agreed that the determination of this issue turns upon the answer to the following question: Did the District Court, in the 1958 tax case, adopt in its determination a position maintained

---

[9] As a consequence, we need not decide whether *Golsen* would in any event be inapplicable, since the petitioners in docket No. 4457–68 resided within the Eighth Circuit at the time of the filing of their petition herein, so that any appeal by them or with respect to them would be to the Court of Appeals for that circuit in accordance with the provisions of sec. 7482.

[10] Sec. 1.357–1, Income Tax Regs., states: "Section 357(a) does not affect the rule that liabilities assumed are to be taken into account for the purpose of computing the amount of gain or loss realized under section 1001 upon an exchange." We also observe that adoption of an exception urged by respondent would create serious problems with respect to the tax treatment to the transferor of payments on the mortgage note after the assumption and before the effective date of release. Compare *Crane* v. *Commissioner*, 331 U.S. 1, 10 (1947).

[11] In view of our conclusion herein, we need not decide when the release became effective. Cf. *Likins-Foster Honolulu Corp.* v. *Commissioner*, 417 F. 2d 285 (C.A. 10, (1969). Similarly, we have found it unnecessary to deal with the question whether the rationale of the District Court that the amount represented by the assumption of the mortgage was to be taken into account in fiscal 1959 operates as collateral estoppel for the purpose of our decision herein—a point which neither party has argued. Similarly, since neither party makes any claim that fiscal 1958 is the proper year of taxability for the purposes of this case (see p. 828, *supra*), we have deemed it unnecessary to consider the extent to which collateral estoppel precludes a determination of that question. Compare *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948).

by Kent Homes, Inc., which was inconsistent with the erroneous exclusion or omission of such gain from 1959 income?[12] Secs. 1311 (b)(1)(B) and 1312(3)(A); secs. 1.1311(a)-1(b), 1.1311(b)-1(c), and 1.1312-3(a)(2), example (1)(ii), Income Tax Regs.

The first requirement of section 1311(b)(1) is that the District Court must have adopted a position inconsistent with the erroneous exclusion of the gain by Kent Homes, Inc., for fiscal year 1959. Where the time of taxability involves only 2 years, it is clear that, in deciding nontaxability in 1 year, the decision by the prior court necessarily adopts the position that the other year is the proper year of taxability. *Estate of Mary B. Warburton*, 30 T.C. 34 (1958); *Daniel M. Cory*, 29 T.C. 903 (1958), aff'd. 261 F. 2d 702 (C.A. 2, 1958). Where the choice is among 3 years, a decision of nontaxability in 1 year does not in and of itself compel the conclusion that a position was adopted with respect to a particular year of taxability. Although the actual decision of the District Court was simply that the gain attributable to the assumption of the mortgage note was not income to Kent Homes, Inc., in its fiscal year 1958, Judge Templar did find that the effective date of the three-party agreement, wherein the United States assumed Kent Homes' mortgage, was in fiscal 1959. Based upon this finding, he went on to conclude "that the gain resulting to the plaintiff was never determined or made available to it in fiscal 1958 and *by reason of the facts found herein was properly taxable in fiscal 1959.*" (Emphasis added.) See *Kent Homes, Inc.* v. *United States*, 279 F. Supp. at 660. We think it clear that the determination as to the effective date of the three-party agreement was the foundation

---

[12] The pertinent statutory provisions provide as follows:

SEC. 1311. CORRECTION OF ERROR.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if—

(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary or his delegate, or

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position maintained by the Secretary or his delegate in the case described in subparagraph (A) or maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

(A) ITEMS INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, * * *

of Judge Templar's decision. Consequently, we conclude that the District Court adopted a position inconsistent with the erroneous exclusion of gain in fiscal 1959.

The second requirement of section 1311(b)(1) is that the position adopted by the prior decision must have been maintained by the party against whom the adjustment for the barred year is sought. Kent Homes' overall contention in the District Court was that any gain with respect to the mortgage note was not realized until the time of its release from liability thereon, to wit, in its fiscal year 1963. But the fact is that a significant issue before that court centered on the effective date of the three-party agreement under the terms of which the United States assumed the obligations with respect to the mortgage and mortgage note and the corporation was thereby relieved of its primary liability thereon. The Government argued that the agreement was effective in fiscal 1958 and Kent Homes, Inc., argued that it was not effective until fiscal 1959. To be sure, the corporation went on to argue that the effective date of the agreement was not determinative and that the absence of a release postponed taxability until fiscal 1963, an argument which the District Court did not adopt and which we have rejected herein. But it, cannot be gainsaid that Kent Homes, Inc., sought to persuade the District Court of the validity of its contention of nontaxability in fiscal 1958 by its argument that the three-party agreement became effective in the later year and that, on the face of that court's opinion, it was successful in so doing. Having thus planted the seed, it cannot turn its back on the harvest. We think that section 1311, in stating that "if * * * there is adopted in the determination *a* position maintained by the taxpayer" (emphasis added), encompasses a situation where the taxpayer, during the course of litigation, maintains several positions as to the time of taxability of a concededly taxable item and the court adopts one or more of such positions in its determination.[13] Cf. *Estate of A. W. SoRelle*, 31 T.C. 272, 275 *et seq.* (1958). In our opinion, this is precisely what occurred here. We conclude that the corporation's position as to the effective date of the three-party agreement was inconsistent with its erroneous exclusion in fiscal 1959 of the gain resulting from the assumption by the United States of the

[13] Compare *Estate of Donald F. Ochs*, T.C. Memo. 1966–71. We note that this is not a case where we are required to deal with a situation where the taxpayer argues primarily transactional nontaxability and alternatively taxability in another year, and the court adopts the alternative argument. Compare *Commissioner* v. *Goldstein's Estate*, 340 F. 2d 24 (C.A. 2, 1965), affirming a Memorandum Opinion of this Court; *Dobson* v. *United States*, 330 F. 2d 646 (Ct. Cl. 1964) ; *G–B, Inc.* v. *United States*, 302 F. Supp. 851 (D. Colo. 1969), affirmed per curiam 422 F. 2d 1035 (C.A. 10, 1970) ; *Heer-Andres Investment Co.*, 22 T.C. 385 (1954).

obligations under the mortgage and mortgage note and that the assessment for fiscal 1959 was not barred by the running of the period of limitations.

In view of the foregoing, we do not decide whether in every case where a taxpayer concedes taxability but merely advocates successfully in the prior litigation that the year involved is the wrong year, the requirement of section 1311 as regards the maintenance of an inconsistent position is satisfied. Compare *Karpe* v. *United States*, 335 F. 2d 454 (Ct. Cl. 1964). Similarly, we need not deal either with respondent's contention that certain statements made before the District Court at the opening of the trial themselves constituted an argument by Kent Homes, Inc., that fiscal year 1959 was the proper year (cf. *G–B, Inc.* v. *United States*, 302 F. Supp. 851 (D. Colo. 1969), affirmed per curiam 422 F. 2d 1035 (C.A. 10, 1970); *Estate of A. W. SoRelle*, 31 T.C. at 275) or with the question whether the statements of the corporation's counsel constituted a waiver of the statute of limitations for fiscal year 1959 [14] (see sec. 301.6501(c)–1(d), Income Tax Regs.; *Estate of James F. Suter*, 29 T.C. 244, 261 (1957)).

### Gain and Interest Income from the 1961 Deposit

Respondent's primary claim has been that the entire gain from the condemnation, including the portion of the gain represented by the corporation's share of the December 18, 1961, deposit, as well as its share of that deposit representing interest, should be included in the corporation's income for fiscal year 1963. The corporation reported its portion of the 1961 deposit as gain and interest in its return for fiscal year 1963 pursuant to a subchapter S election, and the individual petitioners included their shares thereof in their 1963 returns. In their petitions, the individual petitioners claimed an overpayment with respect to the interest item, contending that such item was properly includable in the income of the corporation for its fiscal year 1962.[15]

On brief, petitioners concede that they have not met their burden of proof with respect to their claim of overpayment, apparently in the hope that this will produce a decision on our part which can be used to preclude litigation of the substantive issues involved in the refund suit by the corporation now pending for fiscal 1962 (see fn. 5, *supra*). We are not disposed thus to be seduced. As we see it, the concession amounts to no more than an abandonment of petitioners' claims for

[14] The return was in fact filed on Apr. 13, 1959. It was due on Apr. 15, 1959, and there is no evidence that the time for filing was extended. The 6-year period for assessment expired on Apr. 15, 1965. The trial started on Apr. 16, 1965.

[15] No such claim was made with respect to the portion of the gain represented by the Dec. 18, 1961, deposit because there presumably was no overpayment attributable thereto due to an offsetting capital loss.

overpayment for 1963. We therefore consider that the issue of taxability of interest income in 1963, as well as the taxability in that year of the gain represented by the 1961 deposit, is not properly before us. Accordingly, we make no decision nor do we express any opinion with respect thereto, leaving these matters to be determined by the District Court. Consequently, there is no need for us to consider the extent to which the claims against the 1961 deposit were sufficient to defer includability in income of the share of Kent Homes, Inc., until its fiscal year 1963, when payment was actually made, and the differences between the positions of accrual and cash basis taxpayers in this type of situation. See *Harry D. Aldridge,* 51 T.C. 475, 482 (1968).

Reviewed by the Court.

> *Decision will be entered for the respondent in docket No. 4456-68.*
>
> *Appropriate decisions in accordance with the foregoing and, to the extent necessary, in accordance with Rule 50 will be entered in docket Nos. 4457-68, 4458-68, 4459-68, and 4536-68.*

---

Simpson, *J.,* concurring: In general, I agree with the conclusions of the majority of the Court, but I wish to express my views concerning the applicability of section 1311 in this case.

The meaning of the provisions of section 1311(b)(1), relating to the maintenance of an inconsistent position, can be understood more easily if one has in mind the reason for such provisions. The general purpose of section 1311 was to permit adjustments with respect to taxable years closed by the statute of limitations. However, adjustments were authorized only against those persons who attempted to take advantage of the running of the statute of limitations. The provisions relating to the maintenance of an inconsistent position were included to carry out the latter objective, and that was the only reason for their inclusion. S. Rept. No. 1567, to accompany the Revenue Act of 1938 (Pub. L. No. 554), 75th Cong., 3d Sess., p. 49 (1938).

Section 1311(b)(1) provides, in a case of this type, that no adjustment shall be made under section 1311 unless—

> * * * there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,
>
> and the position * * * maintained by the taxpayer * * * is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

To determine whether such provision is applicable in this case, the questions which must be considered are: Did the determination adopt a position maintained by the taxpayer? And was that position incon-

sistent with the erroneous omission of the gain from the proper taxable year?

It is first necessary to decide what is meant by "the position maintained by the taxpayer." In their article, Maguire, Surrey, and Traynor suggested that:

The inconsistency of the position is ascertained by reference to what was actually done in the earlier year rather than to what the taxpayer or the Commissioner may have urged at that time. * * * [Maguire, Surrey and Traynor, "Section 820 of the Revenue Act of 1938," 48 Yale L. J. 735 (1938).]

In *Karpe* v. *United States*, 335 F. 2d 454, 461 (1964), the Court of Claims said:

The drafters by using the word "position" seem to have required that the court making the determination not only grant the result urged but also adopt the party's general theory as a basis for reaching this result. * * *

In that case, the taxpayer sought to avoid the applicability of section 1311 by arguing that the earlier determination had not adopted his theory. However, the Court of Claims concluded that it was sufficient that the determination had adopted the result sought by him and in general on the theory proposed by him.

In the District Court case, Kent Homes' position was that the gain was not taxable in 1958 because the transaction was not completed in that year. In support of that position, it argued that the transaction was completed in a later year, 1963. The only issue for the District Court to decide was whether there was a taxable transaction in 1958, and it decided there was not. The District Court was not required to decide what was the proper taxable year, and ordinarily, it would have expressed no opinion on that issue. It granted the result sought by Kent Homes and in general on the theory urged by the corporation.

It is clear that the determination did adopt the position maintained by Kent Homes—the District Court held that there was no taxable transaction in 1958. As I understand the words of section 1311(b(1), there is no requirement that the court in the earlier determination express any views as to the proper year for reporting the gain. Although a taxpayer may argue that the transaction is not taxable in the year in issue because it is taxable in some other year, there is no requirement that the court determine the year of taxability; in fact, it would be dictum for the court to do so. The only question is did the determination adopt the position maintained by the taxpayer; and if we distinguish between the position and arguments maintained by the taxpayer, it is clear that the court did adopt Kent Homes' position.

The applicability of section 1311 does not depend upon whether the court in the earlier determination adopted an inconsistent position—

rather, the question is whether the position maintained by Kent Homes was inconsistent with its failure to report the gain for the proper taxable year. Before the District Court, the corporation argued that the gain was taxable in a later year, but in fact, it did not report the gain for any subsequent year. In this case, we have now decided that the gain was taxable in 1959. The corporation's failure to include the gain for 1959 is inconsistent with its position that the gain was taxable in a year subsequent to 1958.

When the provisions now contained in sections 1311–1315 were enacted, the Senate Finance Committee stated:

This section of the bill provides an equitable solution of certain classes of income-tax problems, now very numerous, which have caused much hardship to taxpayers and great difficulty to the Commissioner, the Board of Tax Appeals, and the courts. * * *

   *     *     *     *     *     *     *

In each case, under existing law, an unfair benefit would have been obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. Such resort to the statute of limitations is a plain misuse of its fundamental purpose. The purpose of the statute of limitations to prevent the litigation of stale claims is fully recognized and approved. But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute. * * * [S. Rept. No. 1567, supra at p. 48–49.]

The facts of this case present a classic situation for which those provisions were designed. When the parties were before the District Court and the issue was whether the gain was taxable in 1958, the taxpayer sought to avoid taxation in that year of the admitted gain by arguing that it was taxable in a later year, 1963. Now that the respondent has attempted to tax the gain in 1963, the taxpayers argue that the transaction should have been taxed in 1959, but that since the statute of limitations has run for 1959, the gain cannot be taxed in that year. It is just this kind of exploitation of the statute of limitations for which section 1311 was enacted.

It is not my purpose to justify what the respondent did, but he was laboring under a great deal of uncertainty as to what was the proper course of action. Perhaps, he should have anticipated the possibility that 1959 would ultimately be held to be the proper taxable year and have issued a notice of deficiency for such year before the expiration of the statute of limitations. However, while the statute of limitations was running, the taxpayers were arguing that the gain was taxable in 1963, and although I accept this Court's interpretation and conclusion with respect to the decision of the Tenth Circuit in the case of *Likins-Foster Honolulu Corp.* v. *Commissioner*, 417 F. 2d 285

(1969), that decision does indicate that the respondent had some reason for believing that 1963 was the taxable year.

The reasonableness of the respondent's mistake is not the decisive question in the case, but it demonstrates dramatically the reason for section 1311. He acted with some reason in concluding that he should assert the deficiency for 1963; yet, years later, we now conclude that he was wrong and that he should have asserted the deficiency for 1959. I find it difficult to imagine a more persuasive case for applying section 1311.

DRENNEN, ATKINS, DAWSON, HOYT, and FEATHERSTON, *JJ.*, agree with this concurring opinion.

---

QUEALY, *J.*, concurring: I basically agree with the views expressed in the concurring opinion of Judge Simpson regarding the prospective applicability of section 1311 to the circumstances of this case. However, in making this prospective application of section 1311, I do not believe that it is necessary to refer to the legislative history of sections 1311 through 1315 or to any contemporaneous articles written by the supposed authors of those sections.

Where a statute is clear and unambiguous on its face, and the meaning can be gathered from its words and context, it is not the position of a court to seek in the first instance the legislative intent elsewhere. *Burnet* v. *Guggenheim*, 288 U.S. 280 (1933); *Hatfried, Inc.* v. *Commissioner*, 162 F. 2d 628 (C.A. 3, 1947); *Riverdale Co-op. Creamery Ass'n* v. *Commissioner*, 48 F. 2d 711 (C.A. 9, 1931); and *Alexander C. Yarnall*, 9. T.C. 616 (1947), affirmed per curiam 170 F. 2d 272 (C.A. 3, 1948).

The facts of this case bring it squarely within the language of sections 1311 and 1312(3)(A). Section 1311(a) provides in pertinent part that:

If a determination * * * is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

In this case, the determination is described by section 1312(3)(A) in that the decision of the U.S. District Court with respect to the year 1958 required "the exclusion from gross income of an item * * * with respect to which tax was paid and which was erroneously * * * omitted from the gross income of the taxpayer for another taxable year."

Under section 1311(b)(1)(B), the position maintained by the taxpayer and adopted in the determination must be inconsistent, in this

case at least, with the erroneous exclusion of income from "another taxable year." In this case, the District Court in its determination did adopt a position maintained by the taxpayer, and this position was inconsistent with the taxpayer's erroneous exclusion of the item from his income for "another taxable year" which, in this case, is a year subsequent to 1958.

Of particular significance in the statutory framework is the use in section 1312(3)(A) of the phrase "another taxable year" as opposed to "a prior taxable year." In this case, there was a refund suit where the determination with respect to the year involved in the refund suit (1958) would necessarily become final in a subsequent year, where pending that determination the same item was omitted from the return of the taxpayer for a year subsequent to the year involved in the suit, and where the statute of limitations prevents the assessment of a deficiency for that subsequent year. Thus, the subsequent year is "another taxable year," and the language of section 1312(3)(A) clearly embraces the circumstances of this case. It is therefore unnecessary to look to sources outside that language to justify the prospective application of section 1311 where the other requirements of that section are met as they are in this case.

Furthermore, section 1314(a)(2) requires that after fixing the tax liability, as previously determined for the year that the item should have been included, there shall be ascertained "the increase * * * in tax previously determined which results solely from the correct treatment of the item which was the subject of the error." The "item" in dispute in this case is limited to the gain that was in issue in the 1958 litigation. We have held in this case that 1959 was the proper year for the inclusion of the "item" in dispute. If 1959 was not the proper year, the Commissioner's determination in the notice of deficiency for that year cannot be sustained as the correct treatment of the item will not have been ascertained.

---

STERRETT, J., dissenting: I respectfully dissent from the majority's interpretation of section 1311 of the Code.

The question to be answered, as fairly stated by the majority, is as follows: "Did the District Court, in the 1958 tax case, adopt in its determination a position maintained by Kent Homes, Inc., which was inconsistent with the erroneous exclusion or omission of such gain from 1959 income?"

While the District Court had jurisdiction to determine only the limited question of whether the gain at issue was taxable in 1958, Kent Homes, in arguing the negative, consistently maintained the position before that court that the gain was taxable in 1963. It is true that, in arguing for the nontaxable status in 1958, Kent Homes contended,

as one basis for its position, that the so-called three-party agreement was not effective until 1959. However, it did not suggest that such effective date created the taxable event and not until this very case was such a possibility directly at issue. It is the majority herein which for the first time attaches such importance to that date.

Since Kent Homes never contended the gain was taxable in 1959 and always argued for a 1963 taxable year, how can it be said that it took a position inconsistent with the erroneous exclusion of said gain from 1959 income?

Further, since the District Court only had the year 1958 before it,[1] the most it could do was to adopt in its determination the position maintained by the taxpayer that said gain was not taxable in 1958. Even were Kent Homes to argue for a 1959 tax year, which the facts belie, the District Court did not have the authority to adopt that position for the later year.

Finally, since the taxpayer consistently contended that the gain was taxable in 1963, this is not the sort of equitable situation where one should even be tempted to interpret a statute so as to bail out an innocent party. See *Olin Mathieson Chemical Corporation* v. *United States*, 265 F. 2d 293 (C.A. 7, 1959); *Gooding* v. *United States*, 326 F. 2d 988 (Ct. Cl. 1964).

FORRESTER, *J.*, agrees with this dissent.

---

[1] Obviously the District Court's statement with respect to the gain being taxable in 1959 was pure dicta giving birth to no rights or liabilities.