Richard N. and Juanita D. Newbre v. Commissioner.
Newbre v. Commissioner
Docket No. 406-70SC.
United States Tax Court
T.C. Memo 1971-165; 1971 Tax Ct. Memo LEXIS 169; 30 T.C.M. (CCH) 705; T.C.M. (RIA) 71165; July 15, 1971, Filed Richard N. Newbre, pro se, 527 N. Cherokee Ave., Los Angeles, Calif. Stephen W. Simpson, for the respondent. SACKS Memorandum Findings of Fact and Opinion SACKS, Commissioner: Respondent determined a deficiency in petitioners' Federal income tax for the year 1967 in the amount of $411.25. Three issues are presented for our decision: (1) Whether petitioners may deduct a claimed loss of $2,645 arising from the sale of their former residence located in Boise, Idaho in 1967, under the provisions of section 165(c)(2), Internal Revenue Code of 1954; [1] (2) Whether *171 petitioners are entitled to deduct depreciation in the amount of $1,050 with respect to this former residence under the provisions of section 167(a) and the regulations thereunder; and (3) Whether petitioners are entitled to deduct "closing costs" and "commissions" paid incident to the sale of their former home as maintenance expenses under section 212(2). Findings of Fact Some of the facts have been stipulated and are so found. Petitioners are husband and wife whose residence at the time they filed their petition herein was in Los Angeles, California. Petitioners timely filed their 1967 joint Federal income tax return with the district director of internal revenue at Los Angeles, California. Petitioner Richard N. Newbre (herein called petitioner) was employed as a real estate manager by Albertsons, Inc., during the period in issue. He was requested by his employer to move from Portland, Oregon, to Boise, Idaho, to complete a short assignment he believed would last no longer than six weeks. It was anticipated that after this six week period, petitioner would be moved to Los *172 Angeles. Due to a change of circumstance, petitioner agreed to extend his stay in Boise, Idaho, and rented a home there. After approximately six months petitioner and his family had to vacate their rented home. Petitioners then purchased a home in Boise in which they resided until they moved to Los Angeles, California in March of 1967. Prior to relocating in Boise, petitioner had an understanding with Albertsons, Inc., that he would in time be transferred to Los Angeles. However, when petitioners purchased their home in Boise, they were unaware of exactly how much longer they would be required to remain there. Despite the indefiniteness of the duration of their stay in Boise, petitioners decided to purchase a home there so they would have a suitable place to live. They also expected that, when they left Boise, the house could be resold at a profit. The residence which they purchased was acquired at a total cost of $29,739. Of this amount, $3,500 represented the cost of the land on which the home was located. After moving to Los Angeles, petitioners offered their residence for sale at a price of $32,500 through a realtor in Boise. Petitioners received two offers to rent their property *173 but rejected these because they had no desire to be bothered with owning a piece of property so far removed from Los Angeles. The property was finally sold in August of 1967 for $29,000. Petitioners received net proceeds from this sale of $27,094, after deductions for commissions of $1,740, and closing costs of $166. Opinion We are asked to make two determinations in this proceeding. First, we are asked to decide whether petitioners have suffered a 706 loss on the sale of their Boise residence in a transaction entered into for profit under section 165(c)(2). [2] Second, we are requested, by way of amended petition, to determine whether petitioners held their Boise residence for the production of income under the provisions of sections 167(a)(2)[3] and 212(2). [4] For the reasons set forth below we have found that petitioners neither suffered a loss in a transaction entered into for profit nor held the subject property for the production of income within the meaning of the applicable statutory provisions. *174 The resolution of this controversy requires us to ascertain the purposes or intentions of the petitioners in connection with the holding and subsequent sale of their Boise residence. In the Court Reviewed case of Frank A. Newcombe, 54 T.C. 1298 (1970), this Court assiduously chartered the course it will follow in deciding when residential property has been converted to property held for the production of income. We have attempted to apply these same criteria to the instant facts. We have also considered the question of whether the residential property here involved was otherwise appropriated to income-producing purposes within the meaning of section 1.165-9, [5] Income Tax Regs.
*175 Petitioners occupied their Boise property for at least two years as their personal residence. After abandoning it as their residence in March of 1967, petitioners permitted the house to remain vacant until it was finally sold in August of 1967. During this interim period petitioners rejected two offers to rent the house, indicating they were only interested in selling the property. These facts, without more, appear to us to be devoid of any indication that petitioners in some way "otherwise appropriated to income-producing purposes" their former residence. See Edward N. Wilson, 49 T.C. 406, 415 (1968), reversed and remanded on other grounds, 412 F. 2d 314 (C.A. 6, 1969); Andrew F. McBride, Jr., 50 T.C. 1 (1968), Acq. 1969-1 C.B. 21; Gerald Melone, 45 T.C. 501 (1966); Harold K. Meyer, 34 T.C. 528 (1960); Warren Leslie, Sr., 6 T.C. 488 (1946); Rumsey v. Commissioner, 82 F. 2d 158 (C.A. 2, 1936), cert. denied 299 U.S. 552; Morgan v. Commissioner, 76 F. 2d 390 (C.A. 5, 1935), cert. denied 296 U.S. 601; 5 Mertens, Law of Federal Income *176 Taxation (Malone Rev.) sec. 28.78. To the contrary, we are persuaded here that petitioners were primarily seeking to recoup their investment from the Boise residence. Although petitioners may have anticipated a future profit from the ultimate sale of their residence when they acquired it, this profit was no more than the appreciation in value which was expected to accrue during their occupancy of the property as a residence. As we stated in Frank A. Newcombe, supra, at page 1302: The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value. Under such circumstances, only a most exceptional situation will permit a finding that the statutory requirement has been satisfied. See also Gilbert Wilkes, 17 T.C. 865 (1951). 707 Neither are we convinced that petitioners held their Boise residence for the production of income during 1967. Petitioners' only action here was to offer *177 the Boise house for sale immediately upon its abandonment as a residence. Without further affirmative evidence of a conversion of this property to income producing use, we see no rational basis upon which to conclude such a conversion occurred at the time the property was abandoned as a residence. See Jones v. Commissioner, 152 F. 2d 392 (C.A. 9, 1945), affirming per curiam a Memorandum Opinion of this Court; William C. Horrmann, 17 T.C. 903 (1951); Charles F. Neave, 17 T.C. 1237 (1952); Frank A. Newcombe, supra; 4 A Mertens, Law of Federal Income Taxation (Riordan Revision), sec. 25A.08. Petitioners urge that their case should be governed by the decision in Commissioner v. Hulet P. Smith, 397 F. 2d 804 (C.A. 9, 1968) affirming per curiam a Memorandum Opinion of this Court. In that case, under what appears to have been somewhat similar circumstances, it was held that depreciation and maintenance expenses were properly deductible on the ground that the residence there was held for the production of income while being offered for sale. While certain facts are analogous, we are faced here with different issues on *178 two points as well as an argument not previously considered by this Court with respect to the deduction of depreciation where residential property is held only for sale. In Smith no claim for a loss deduction under section 165(c)(2) was made and no consideration was accorded to this point by either the Tax Court or the Circuit Court. Also, the maintenance costs at issue in the Smith case represented actual maintenance and repair work expenses and were not composed of real estate commissions and "closing costs" which are offsets against the proceeds of sale received upon the disposition of real property, Irma Jones Hunt, 47 B.T.A. 829 (1942); Mrs. E. A. Giffin, 19 B.T.A. 1243 (1930), rather than section 212(2) deductions. Lastly, the depreciation deduction claimed by petitioners arises in a different posture than in Smith. In that case the government did not contest in the Tax Court that the salvage value of the property in question was greater than zero. In the case before us respondent now argues that even if the subject property is found to have been held for the production of income, since it is only held for the production of income by way of a sale, *179 no deduction for depreciation is allowable since the property has no reasonably ascertainable useful life and has a salvage value at least equal to its fair market value as of the date converted to income-producing use. These arguments have substantial appeal. Since the residence in question is held solely for immediate sale, its useful life cannot be accurately determined. Moreover, at the time the residence is ostensibly converted to income-producing property held only for sale its estimated salvage value cannot be less than its fair market value as of the date of conversion since that is presumably the amount that will be realized upon its sale. See Fasan, "Maintenance and Depreciation Deductions for a Personal Residence Offered for Sale." 25 Tax Law Review 269, 278 (1970). In affirming the decision in the Smith case, the Circuit Court has indicated that unusual circumstances present in the case were of some significance. No such unusual circumstances are present in this proceeding. Further, as we stated in Newcombe, supra, at page 1303: We hold that, during the taxable year 1966, petitioners did not hold the Pine Bluff residence for the production *180 of income. In so holding, we recognize that our decision in Hulet P. Smith, supra, reaches a contrary result on similar facts. But our statement in that case that the issue was a "question" of "law" is belied by the affirmance by the Ninth Circuit on the ground that "we are not persuaded that the Tax Court's factual finding and its consequent conclusions are clearly wrong" and the statement that "the Government makes a strong case for reversal." See 397 F. 2d at 804. We therefore consider that case inapposite and of little precedential value. Accordingly, we do not regard the holding of the Court of Appeals for the Ninth Circuit in the Smith case to be controlling since the position taken by that Court is not so clear as to require the application of our decision in Jack E. Golsen, 54 T.C. 742 (1970) on appeal (C.A. 10, May 4, 1970), wherein we indicated that henceforth we would uniformly follow the position of the Circuit Court to which appeal would normally lie. Kent Homes, Inc., 55 T.C. 820, 708 830-831 (1971), on appeal (C.A. 10, May 24, 1971). Reviewed and adopted as the report of the Small Tax Case Division. *181 Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 165. LOSSES. (c) Limitation on Losses of Individuals. -in the case of an individual, the deduction under subsection (a) shall be limited to - * * * (2) Losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * * ↩
3. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - * * * (2) of property held for the production of income. ↩
4. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - * * * (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩
5. § 1.165-9 Sale of residential property. (a) Losses not allowed. A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible under section 165(a). (b) Property converted from personal use. (1) If property purchased or constructed by the taxpayer for use as his personal residence is, prior to its sale, rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss sustained on the sale of the property shall be allowed as a deduction under section 165(a)↩.