**G–B, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. C–753.**

United States District Court
D. Colorado.

Jan. 15, 1969.

Dawson, Nagel, Sherman & Howard, by Mr. Bruce L. Evans, Denver, Colo., for plaintiff.

Joseph H. Thibodeau, Dept. of Justice, Washington, D. C., and Lawrence M. Henry, U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on plaintiff's motion for summary judgment. Plaintiff paid an assessed deficiency for its taxable year of 1959 and now brings suit for a refund. Jurisdiction is predicated upon § 1346(a) (1) of Title 28, United States Code. In plaintiff's motion for summary judgment, taxpayer asserts that the assessment of deficiency for the year of 1959 is barred by the statute of limitations. The government admits that the general statute of limitations, 26 U.S.C. § 6501(a), has run for the year of 1959, but contends that the mitigation provisions, 26 U.S.C. §§ 1311–1314, opened for assessment the otherwise barred year. For purposes of the summary judgment motion, there remains only the question of law whether the facts of the case come within the mitigation provisions of the Internal Revenue Code. We have read the briefs and heard oral argument. The motion for summary judgment will be granted.

To understand our conclusion that the facts of this case do not come within the mitigation provisions, some detail of the facts is necessary. The history of the case starts in 1959 when plaintiff, who was engaged in general real estate, insurance and the mortgage banking business in Denver, Colorado, decided to cause the incorporation of a separate mortgage company. After the incorporation, plaintiff and the new mortgage company entered into a series of transfers which are in issue before this Court. Although several events occurred in early 1960 which would have bearing on the question of taxability, the transfers in issue took place in 1959. These transfers involved the passing of cash, working loans, and mortgage servicing contracts from plaintiff to the new mortgage company in consideration for shares of the new corporation, a ninety-day note, and some cash. Plaintiff filed tax returns for the years of 1959 and 1960 but did not report any gains from the transactions. Plaintiff maintained that the transactions were nontaxable events within § 351 of the Internal Revenue Code.

The Internal Revenue Service, on the other hand, took the position that the 1959 transactions along with other events in 1960 constituted a net capital gain of $79,333.31 in 1960. By formal notice of the deficiency sent to plaintiff around May of 1963, plaintiff was assessed a deficiency in the amount of

$19,311.85 for 1960. The deficiency was paid. In early July of 1964, less than two years later, plaintiff filed claim for refund of the deficiency paid. The claim was formally denied and suit for a refund was filed in this Court on October 4, 1965. Plaintiff claimed that the assessment was illegal in that the transactions were nontaxable events. In the alternative, although not conceding taxability, plaintiff claimed that the transactions occurred and were consummated completely in 1959 and not in 1960.

Plaintiff then moved the Court for a summary judgment stating that all of the transactions in issue were consummated in 1959, and consequently no tax could be due for 1960 with respect to these items. Plaintiff also stated that " * * * Federal income liability of the plaintiff, resulting from such transfers, would have to be for its taxable year ending December 31, 1959." It noted that any assessment for that year was now barred by the statute of limitations. The government did not oppose the motion and the Court entered an Order granting the motion on March 1, 1966. G–B, Inc., v. United States, Civil Action No. 9424 (D.Colo. March 1, 1966).

On February 28, 1967 the Internal Revenue Service assessed by formal notice a deficiency of $19,833.32 for the year 1959 with respect to the items heretofore mentioned. Plaintiff paid the deficiency in July of the same year and soon thereafter filed with the Internal Revenue Department a claim for a refund. The claim was denied. Plaintiff, having received no formal denial or a refund in six months, brought the present suit for a refund on March 8, 1968. Plaintiff's complaint claims that the assessment is illegal in that it is barred by the statute of limitations; the government should have asserted the assessment as a compulsory counterclaim in the earlier suit; the transactions are tax free events; and should the transactions be taxable no tax is due because the transfers did not result in any gain to plaintiff.

The government answered admitting certain allegations of the plaintiff. Upon the admitted allegations and an affidavit, plaintiff moved for a summary judgment on the ground that the assessment was barred by the statute of limitations. Plaintiff argued that not only had the statute of limitations run, but that none of the mitigation provisions were applicable. The government has taken the position that the only circumstance of adjustment which it relies upon is that stated in § 1312(3) (A). Some argument has been raised with respect to the circumstance of adjustment stated in § 1312(3) (B), however the government concedes its inapplicability. Consequently, we do not consider the arguments raised with respect to § 1312(3) (B).

The issue simply stated is: Do the facts present a circumstance of adjustment within § 1312(3) (A) so as to mitigate the statute of limitations and allow the assessment of deficiency against plaintiff for the year of 1959.

▪ Section 1312(3) (A) provides for a circumstance of adjustment where a determination has been made for a current year which

> * * * requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year * * *. 26 U.S.C. § 1312(3) (A).

The implementation of this section depends upon a finding that four conditions are present. Three conditions are not in dispute and are found in the instant case; the fourth is in dispute and its resolution is fundamental to our decision. The three undisputed conditions are: (1) a determination within the meaning of § 1313(a) of the Internal Revenue Code has been made (this Court's prior Order of March 1, 1966); (2) the determination is with respect to a circumstance of adjustment specified in § 1312 (the exclusion of the transac-

tions from income) in the current year (1960); and (3) either the item be included in the tax return filed by the taxpayer *or* the tax on the item be paid (the payment of the assessed deficiency by taxpayer[1]).

The fourth condition is the requirement that the party who is relying upon the shelter of the statute of limitations have maintained before the court in the determination a position which the court adopts in its decision and which position is inconsistent with the "erroneous \* \* \* exclusion \* \* \* or non-recognition" of the item for another year barred at the time of the determination. 26 U.S.C. § 1311(b) (1) (B). If it is found that plaintiff maintained an inconsistent position and that this position was adopted by this Court in its March 1, 1966 Order, then § 1312(3) (A) applies to mitigate the statute of limitations and the assessment of deficiency is not illegal from the standpoint that it is barred. The contrary conclusion must be reached should it be found that either the plaintiff did not maintain an inconsistent position or the Court did not adopt the inconsistent position.

■ The purpose of the mitigation sections is to correct tax inequities where the statute of limitations, if controlling, would serve to create a double taxation or double escape from taxation to the unjust hardship or benefit of either the taxpayer or the government. Karpe v. United States, 335 F.2d 454 (Ct.Cl.1964). By means of allowing an adjustment of an item of tax for an otherwise closed year in situations where there arises a determination with respect to that item of tax for a current year and which determination results in the prior erroneous handling of the item in the closed year, Congress has provided for the correction of inequities and yet

kept intact the essential function of the statute of limitations. Senate Rep.No. 1567, 75th Cong., 3rd Sess., p. 49 (1938). The scheme of adjustment and correction operates to place the item of tax in the correct year, in the proper taxpayer, and with the correct basis. 26 U.S.C. §§ 1311–1314. It provides a formula to correct inequities which have been occasioned by the corrections, final determinations, and errors of either the taxpayer or government. United States v. Rushlight, 291 F.2d 508, 514 (9th Cir. 1961). Except in two circumstances not herein involved, the inequity arising must be caused by an inconsistent position taken either by the taxpayer or the government. The sections do not exist to correct that nature of error which could have been corrected during the normal course of running of the statute of limitations.

The requirement of inconsistency of position is to avoid the complete abrogation of the statute of limitations. Without the requirement either party could open up a closed year and make corrections of errors which should have been corrected during the running of the statute of limitations. Where no inconsistency has been maintained, the failure to correct errors within the statute of limitations is not a matter of inequitable result, but one wanting of diligence. On the other hand, the successful maintenance of an inconsistent position affecting an item in a current year so as to cause its erroneous handling in a closed year results in surprise and hardship unremediable without the mitigation sections.

The facts before us present a taxpayer who did not include in its returns for the years 1959 and 1960 certain transactions as capital gain. In fact, taxpayer maintained that the transactions were nontaxable events. Had taxpayer in-

---

1. Payment may be made either by the inclusion of the item in the tax return, or by the payment of the deficiency asserted for failure to include the item. Had the taxpayer not paid the deficiency and sought a refund, but instead had contest-

ed the deficiency in the Tax Court, § 1312 (3) (A) would not now be available to the government for argument over the fourth condition. *See*, Maguire, Surrey and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L.J. 719, 755 (1939).

cluded the items in its return for the year 1960, waited until the year 1959 was barred by the statute of limitations, filed for a refund on the tax paid in 1960 on the ground that the tax was due for 1959, and that refund had been granted on that theory, then the mitigation sections would clearly apply to allow the government to assess a deficiency for the year 1959. But this was not the case. Here, the government assessed a deficiency with respect to the transaction for the year 1960. It later did not oppose taxpayer's motion for summary judgment in the suit for a refund. The government had before it an agent's report detailing the transactions, when they took place, and his conclusion that they were taxable as a series of events leading to a capital gain in 1960. The government made the decision for which year it would assess the tax. It chose 1960.

■ Where is the taxpayer's inconsistency? It had placed the facts of the transactions before the Commissioner and maintained their nontaxability. Its motion for summary judgment was grounded on the statement that the transactions took place in 1959, and not 1960, and as a consequence they did not cause a tax in 1960. The government bases its claim of the taxpayer's inconsistency on the fact that taxpayer took the position in the earlier case that it was not taxable for 1960 because it was taxable on the item, if at all, in 1959, owing to the fact that the transactions took place in 1959. The government contends that this statement is "diametrically opposed, let alone technically 'inconsistent'." The taxpayer's complaint in the earlier case does not reflect this statement. In its complaint taxpayer pleaded in the alternative that assuming, "contrary to plaintiff's contention," the transfers were not tax free, still no

income would result for 1960 since the transfers took place in 1959. The taxpayer's motion for summary judgment, on the other hand, did state that tax liability for the transfers "would have to be" for the year 1959. These statements, while contrary to an outright denial of liability for 1959, do not support a position inconsistent with the exclusion or nonrecognition of income in the 1959 return. They do not admit the taxability of the item; they only go to support a finding that the tax could not be incurred in 1960. Both are hypothetical speculations which strengthen taxpayer's case for 1960, but are unessential to the conclusion that no tax was due on the item for 1960.

■■ Even were we to find that the statements of taxpayer were to the effect that liability for the transactions lay in the year 1959, we would still be compelled to conclude that this Court did not adopt that position in its determination. The issue before this Court in the determination as raised by plaintiff's summary judgment motion was whether the tax was properly assessed for the year 1960, not whether the transactions constituted taxable events. The holding of the Court's Order granting the motion was only that the assessment for 1960 was illegal, because the transactions had not taken place in 1960. Any reading of the Order's significance beyond this becomes dicta, or contrary to the prohibition against judicial advisory opinions.

Finally, we do not think that the Court's determination in any way implies, as required by § 1311(b) (1) (B), that the taxpayer's exclusion of the items in 1959 was erroneous, because the determination has no res judicata effect on the merits of the taxability of the items.[2] The lack of res judicata effect

2. All of the cases cited to this Court and others disclosed by independent research support our conclusion that the determination must necessarily imply that the handling of the item in the closed year is erroneous and that the determination have res judicata effect on the adjust-

ment of the error. We cite only a few representative cases. *See*, Yagoda v. Commissioner of Internal Revenue, 331 F.2d 485 (2d Cir. 1964) aff'd 39 T.C. 170 (1962); Ross v. United States, 148 F.Supp. 330 (D.Mass. 1957); Dobson v. United States, 330 F.2d 646, 165 Ct.Cl.

is significant in this regard. An adjustment opening a closed year can be made with respect to a circumstance within § 1312(3) (A) only if the determination adopts a position maintained by the taxpayer which is inconsistent with the erroneous handling of the item in the closed year. 26 U.S.C. § 1311(b) (1) (B). The determination does not *ipso facto* establish such erroneous handling; this is arrived at in the second proceeding brought for purposes of adjusting the error. However, where the determination is a court decision, res judicata will tie the error to the determination. *See,* Maguire, Surrey and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L.J. 718, 753 (1938). Consequently, where the determination does not go to the merits of the taxability of the item, no res judicata effect arises to establish the erroneous handling of that item in the closed year. In the instant case, the determination did not resolve the merits of the taxability of the item and therefore it did not establish any erroneous handling of the items for the closed year 1959.

We also note the following passage from the 1939 Columbia Law Review. Speaking on the matter of the determination's adoption of a party's position, the article states as follows:

> In the cases arising under Section 820(b) (1) and (2), it will be sufficiently clear that correct inclusion of the item or taking of the deduction in the determination year necessarily implies that the prior inclusion or deduction was incorrect; a similar implication is necessary in cases arising under Section 820(b) (4). However, the inconsistency of a position in the (b) (3) case (double omission or exclusion) will not be as apparent if the reasons for the taxpayer's erroneous action in the previous year do not appear, or if the determination declares only

that the item is not taxable in the determination year. From the earlier omission alone but two alternative inferences can reasonably be drawn as to the taxpayer's position: (1) the item is not taxable at all, or (2) the item is not taxable in the error year. For the determination to embody an inconsistent position in such case, it must negate both propositions, by stating: (1) the item is taxable and (2) the item is taxable in the error year. In order to obtain a corrective adjustment, therefore, the Commissioner must seek a determination which contains these statements. Section 820: Equity in the Administration of the Revenue Act, 39 Colum.L.Rev. 460, 476 (1939).

Certainly this Court's determination of March 1, 1966 did not negative both propositions that the tax was not due in 1959 and that it was not taxable at all. It only concluded that no tax was due with respect to the items in 1960. We find therefore that it did not adopt an inconsistent position of the taxpayer even if the taxpayer had maintained an inconsistent position before the Court.

In conclusion, we find that the taxpayer did not maintain an inconsistent position before this Court in the suit for a refund involving an assessed deficiency for the year 1960. Furthermore, this Court neither adopted an inconsistent position of taxpayer even if it were maintained nor established the erroneous handling of the item in 1959. Consequently, the facts of this case do not present a situation for the operation of the mitigation sections of the Internal Revenue Code. The statute of limitations having run, the motion for summary judgment must be granted. It is therefore

Ordered that the motion for summary judgment be, and hereby is, granted.

---

460 (1964); Cotter v. Commissioner of Internal Revenue, 40 T.C. 506 (1963); Bradford v. Commissioner of Internal Revenue, 34 T.C. 1051 (1960); Ochs v. Commissioner, 25 T.C.M. 399 (1966).