**KENT HOMES, INC., Plaintiff-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

**Alton K. BLOSSER et al., Plaintiffs-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellant.**

**Nos. 71–1396, 71–1397.**

United States Court of Appeals, Tenth Circuit.

Feb. 16, 1972.

---

to taxpayer Kent Homes, Inc., a Kansas corporation against whom the Commissioner of Internal Revenue had assessed a $69,980.31 deficiency for the taxable year 1959. The sole question for our determination is whether the Tax Court ruled correctly when it applied the mitigation sections of the Internal Revenue Code, 26 U.S.C. § 1311 et seq., the effect of which was to open a year otherwise closed by the running of the six year statute of limitations.

We conclude that the application of these sections under the facts presented was error, and we reverse the judgment of the Tax Court.

Kent Homes in 1951, under the Wherry Military Housing Act, constructed and operated single-dwelling rental houses at Fort Leavenworth, Kansas, for military personnel. The houses were built on land leased by the appellant from the Secretary of the Army for a seventy-five year term. Upon expiration of the lease appellant had the right to remove the houses.

To finance construction appellant gave a note secured by a mortgage on the houses to Prudential Investment Company. This was subsequently assigned to New York Life Insurance Company. The note was insured by the Federal Housing Administration.

Howard A. Spies, of Schroeder, Heeney, Groff & Spies, Topeka, Kan. (Barney J. Heeney, Jr., of Schroeder, Heeney, Groff & Spies, Topeka, Kan., on the brief), for plaintiff-appellant Kent Homes, Inc., and plaintiffs-appellees Alton K. Blosser, et al.

Gary R. Allen, Atty., Tax Div., Dept. of Justice (Fred B. Ugast, Acting Asst. Atty. Gen., and Meyer Rothwacks and Richard W. Perkins, Attys., Tax Div. Dept. of Justice, on the brief), for Commissioner.

Before LEWIS, Chief Judge, and PICKETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a Tax Court ruling, 55 T.C. 820, which was adverse

On December 18, 1957, the Department of the Army commenced condemnation proceedings against the equity of Kent Homes in the Wherry project. Also in December, the Army deposited $83,000.00 with the court, representing the Army's estimate of the fair market value of Kent Homes' equity. In March 1958, an agreement (hereinafter called the three-party agreement) was executed among the Department of the Army, the Federal Housing Administration and the New York Life Insurance Company. By the agreement the Army assumed Kent Homes' obligation on the note and mortgage, but the corporation was not dis-

charged from all liability thereon.[1] In the same agreement the mortgagee waived its claim to the condemnation proceeds.

There followed extensive proceedings concerning the extent of the condemnation and the amount of the award. This culminated in a September 7, 1962 decision by the District Court for the District of Kansas requiring the Army to condemn not only Kent Homes' equity but its entire estate. On September 26, 1962, the New York Life Insurance Company signed an agreement releasing Kent Homes from any further liability under the note and mortgage.

The parties agree that appellant realized gain in the amount of $314,118.14 from the entire condemnation.

Following the court's decision the Commissioner determined that $279,921.-23 of the aforesaid gain was realized by and taxable to Kent Homes in its taxable year ended January 31, 1958 (the corporation was an accrual basis taxpayer). A statutory notice of deficiency in the amount of $69,980.31 was issued and the amount paid by the corporation, which subsequently brought a refund suit in the Kansas District Court.

The Commissioner's deficiency assessment theory, in pertinent part, was that the taxpayer realized gain upon execution of the three-party agreement and more specifically on the Army's assumption of the mortgage therein. On the other hand, the taxpayer in its refund claim and subsequent suit asserted that 1963 was the proper year since it was not discharged from all liability on the mortgage until then. The taxpayer declared the gain in its 1963 return but owed no tax thereon because of intervening events.

The district court determined the following facts. The three-party agreement was effective according to its own recitation on December 18, 1957, which was 44 days before taxable year 1958 expired. However, the signatures of all the parties were not affixed and acknowledged until March 1958 as shown on the face of the document itself.[2] Hence the agreement was not executed and effective until that time. The district court in effect found that the Commissioner had misread the facts as to when the Army had assumed the mortgage and when the taxpayer had the right to withdraw the condemnation deposit, and it granted the taxpayer's refund claim for 1958.[3] Though the issue was not properly before it the court said that 1959 was the correct year.

Though the statutory period had run as to taxable year 1959, the Commissioner filed a deficiency for that year after Judge Templar's decision. The taxpayer invoked the statute of limitations before the Tax Court. As noted above, the Tax Court determined that the tax was owed in 1959 and applied the mitigation provisions to remove the bar.

The section we must consider[4] provides that:

\* \* \* \* \* \*

. . . [A]n adjustment shall be made under this part only if—

\* \* \* \* \* \*

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a defi-

---

1. A clause releasing Kent Homes from all liability was originally written into the agreement but lined out before execution.

2. The agreement was signed by the Secretary of the Army on February 28, 1958, and was acknowledged and notarized on March 13, 1958.

3. Kent Homes, Inc. v. United States, 279 F.Supp. 650, 655, 659 (D.Kan.1967). The court observed that:
   The government presents the case to the Court by ignoring undisputed factual background of the condemnation case. 279 F.Supp. at 659.

4. The presence of the remaining mitigation elements is for all practical purposes conceded. The *district court's decision* was a determination which required the exclusion of gain from gross income in the year for which Kent Homes had paid the deficiency. The gain was erroneously omitted from gross income in another taxable year (1959), and the correction of the erroneous omission was barred by the statute of limitations.

ciency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position . . . maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous . . . omission . . .

\* \* \* · \* \* \*

26 U.S.C. § 1311(b) (1).

The issue we are required to determine is whether, in the first refund suit which was brought in the district court, the above section comes into play to relieve the government from the statute of limitations. This in turn requires us to decide whether the district court adopted a position maintained by the taxpayer, which position was inconsistent with the taxpayer's erroneous omission.

The court decisions on this subject are, to say the least, in conflict; some courts show a tendency to uphold the statute of limitations,[5] while others tend to give effect to the mitigation section.[6] Only one decision from this Circuit bears on the question, a summary affirmance by this court of the United States District Court for the District of Colorado in G–B, Inc. v. United States, 302 F.Supp. 851 (1969), aff'd 422 F.2d 1035 (10th Cir. 1970). Chief Judge Arraj in that case gave full and extensive consideration to the mitigation provision and refused to apply it in facts quite similar to the facts here. He pointed out that generally the inequity needed to

activate the mitigation statute must be caused by an inconsistent position taken by either the taxpayer or the government and also said that the mitigation sections do not exist to correct an error which could have been corrected prior to the running of the statute of limitations. The court said:

> Except in two circumstances not herein involved, the inequity arising must be caused by an inconsistent position taken either by the taxpayer or the government. The sections do not exist to correct that nature of error which could have been corrected during the normal course of running of the statute of limitations. 302 F.Supp. at 854.[7]

From our view of the record, Kent Homes consistently maintained that the gain was attributable not to 1959, which the court held to be the crucial year, but rather 1963, for it was not until that date that Kent Homes was finally released from all potential liability on the obligations which it had incurred. The Commissioner, on the other hand, in the district court action advanced the theory that the three-party agreement and especially the Army's assumption of the mortgage therein gave rise to the taxable occasion, and that the finalization of the transaction took place in 1958. The district court accepted the execution of the contract argument, but found that the three-party agreement had not been executed in taxable year 1958. The evidence was clear that the execution was

---

5. Heineman v. United States, 391 F.2d 648, 652, 183 Ct.Cl. 17 (1968) ; Olin Mathieson Chemical Corp. v. United States, 265 F.2d 293, 296 (7th Cir. 1959) ; Taxeraas v. United States, 269 F.2d 283, 289 (8th Cir. 1959).

6. Yagoda v. Commissioner of Internal Revenue, 331 F.2d 485, 490 (2d Cir. 1964) ; Birchenough v. United States, 410 F.2d 1247, 1251, 187 Ct.Cl. 702 (1969).

7. The court then concluded:
   The requirement of inconsistency of position is to avoid the complete abrogation of the statute of limitations.

Without the requirement either party could open up a closed year and make corrections of errors which should have been corrected during the running of the statute of limitations. Where no inconsistency has been maintained, the failure to correct errors within the statute of limitations is not a matter of inequitable result, but one wanting of diligence. On the other hand, the successful maintenance of an inconsistent position affecting an item in a current year so as to cause its erroneous handling in a closed year results in surprise and hardship unremediable without the mitigation sections. 302 F.Supp. at 854.

in March 1958, a fact that the government had overlooked. It is true that Kent Homes brought this to the attention of the court, and the court held on the basis of finding this fact that the taxpayer was entitled to recover inasmuch as the assessment had been geared to the wrong year.

We are thus faced with a situation in which the Commissioner had the facts before it but failed to interpret and apply them to the legal theory on which it was proceeding, and while the taxpayer helped the court along in its ruling that 1958 was not the proper year, it was the government's overlooking the date of the execution of the agreement that produced the result. The taxpayer all the while argued that 1963 was the taxable year.

Thus, the contribution of the taxpayer to the decision that 1958 was not the proper year was in aid of its theory that 1963 was and hence its part in the district court's result was defensive or negative and not affirmative and positive. Again, it merely aided the court in finding the true facts.

In line with the decision of Chief Judge Arraj, which was adopted by this court in *G–B, Inc.*, this defensive argument is not an inconsistent position as defined by the mitigation provisions. See Commissioner of Internal Revenue v. Goldstein's Estate, 340 F.2d 24, 27 (2d Cir. 1965).

Furthermore, the opinion of the Tax Court does not find that the taxpayer here acted in bad faith or utilized superior knowledge of fact or law in order to take advantage of the government. If that were the situation we would view this cause differently. As it is, however, there is no evidence of actual inconsistent positions by the taxpayer, nor is there evidence that the taxpayer used any devious means to avoid the mitigation section with knowledge withheld from the government, and the taxpayer has not been shown to have manipulated either the Commissioner or the court to his advantage.

Finally, we are not saying that the government should lose because *it* is in some way at fault. See Birchenough v. United States, 410 F.2d 1247, 1251, 187 Ct.Cl. 702 (1969). See also Dobson v. United States, 330 F.2d 646, 165 Ct.Cl. 460 (1964). At the same time, we have been unable to find support in the record for an inference that the taxpayer's conduct was accompanied by bad faith or a lack of good faith. We must reverse the judgment of the Tax Court which applied the mitigation provisions. It is so ordered.