ESTATE OF WILLIAM J. KAPPEL (DECEASED) (WILLIAM D. KAPPEL AND SARA KAPPEL COURTLEY, CO-EXECUTORS) AND SARA KAPPEL COURTLEY, SURVIVING WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 584–76.     Filed June 7, 1978.

---

*Robert G. MacAlister* and *John A. Metz, Jr.,* for the petitioners.

*David W. Otto,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency of $13,675 in the petitioners' Federal income tax for 1954. The issues for decision are: (1) Whether the Commissioner, who relies upon the mitigation provisions of sections 1311 through 1314, Internal Revenue Code of 1954,[1] has proved that the Kappels paid a tax on certain annuity income for 1955 within the meaning of section 1312(3)(A) and that they maintained an inconsistent position within the meaning of section 1311(b)(1); (2) whether the Commissioner must prove the deficiency determined by him for 1954, including the contents of the Kappels' tax return for such year, to meet his burden of proving that such sections are applicable; and (3) whether, under rule 13(a) of the Federal Rules of Civil Procedure, the Government was compelled to claim the deficiency at issue in this case as a compulsory counterclaim in *Kappel v. United States,* 369 F. Supp. 267 (W.D. Pa. 1974).

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

The petitioners are the Estate of William J. Kappel and Sara Kappel Courtley.[2] William J. Kappel died January 20, 1967. His surviving spouse, Sara M. Kappel, subsequently remarried and is currently known as Sara Kappel Courtley. William D. Kappel and Mrs. Courtley were qualified as coexecutors of the Estate of William J. Kappel. The parties stipulated that the coexecutors maintained their residence in Pittsburgh, Pa., at the time the petition was filed, although Mrs. Courtley maintained her personal residence in Miami, Fla. William J. and Sara Kappel filed a joint Federal income tax return for 1954 with the Office of the Internal Revenue Service, Pittsburgh, Pa.

For many years prior to 1954, William J. Kappel (Mr. Kappel) was an officer, director, employee, and shareholder of several corporations. For many years, these corporations had maintained employee pension plans which were administered by several trusts. Pursuant to the trust agreement, the trustee contracted for separate annuity policies on each participating employee. Mr. Kappel was a participating employee in each of the pension plans as well as a trustee of each of the trusts.

In 1954 and 1955, several annuity policies held in trust for the benefit of Mr. Kappel were surrendered and canceled by the trustees of the employee pension plan. The cash surrender value of each policy was distributed to the trustees who used such proceeds to purchase deferred annuities on the lives of members of Mr. Kappel's family. Mr. Kappel did not report the proceeds from these annuities as income on his Federal income tax return for the year in which such policies were surrendered or for the year in which the proceeds of such policies were used to purchase the deferred annuities.

Subsequently, Mr. and Mrs. Kappel's Federal income tax returns for 1954 and 1955 were audited and the revenue agent who conducted such audit proposed a substantial increase in their 1955 income. The largest adjustment resulted from increasing their 1955 income by $276,039.40, representing the cash surrender value of the annuity policies surrendered by the trustees in 1954 and 1955 which, prior thereto, had been held in trust for the benefit of Mr. Kappel. According to the revenue

---

[2] In the petition commencing this case, Mrs. Courtley's first name was spelled "Sara," and since it has not been changed by her counsel, we shall follow that spelling. However, in many documents signed by her and in other documents directed to her, her first name is spelled "Sarah."

agent, the $276,039.40 had been distributed or made available to Mr. Kappel in 1955.

The Kappels protested the adjustments of the revenue agent and requested reconsideration by the Appellate Division of the Internal Revenue Service. They argued that $65,459.06 of the $276,039.40 had been distributed or made available to Mr. Kappel in 1954 and, therefore, should not have been included in their income in 1955. After due consideration, the Appellate Division agreed that $50,100 of the $65,459.06 had been distributed or made available to Mr. Kappel in 1954. However, as to the remaining $15,365.06, the Appellate Division reached the opposite conclusion. Accordingly, the increase in their 1955 income due to the surrender of the annuity policies was decreased to $225,939.40.

The Kappels did not agree that the disputed $15,365.06 was income in 1955. Accordingly, they did not agree to the proposed adjustment, and on December 31, 1962, the Commissioner issued a statutory notice of deficiency for 1955, including such amount in the Kappels' income for that year. On such date, the statute of limitations under section 6501 barred assessment or collection of a deficiency for the taxable year 1954. The Kappels paid the deficiency and filed a refund claim for 1955.

After allowing the Commissioner 6 months to act on their refund claim, the Kappels filed a complaint in Civil Action No. 66–1026 in the United States District Court for the Western District of Pennsylvania for refund of Federal income taxes paid for 1955. In such action, they contended that the $15,365.06 was not income in 1955 on the following grounds:

> Taxpayer contends that such distributions were taxable to him in 1954.
>
>         *        *        *        *        *        *        *
>
> Taxpayer contends that having (a) "actually received" or at least having constructively received and having the annuities "actually distributed" or "made available" to him, the same were "taxable to him" in the year (which he contends was 1954) in which "so distributed" or "made available" to him.

In addition, the parties in such proceeding stipulated that with respect to the $15,365.06 adjustment, the issue was "Whether the cash surrender value of certain of the annuity policies should be included in the income of William J. Kappel in the year 1955 or in the year 1954," and that the Kappels' position with respect to such issue was "Plaintiff contends that an additional amount of $15,365.06, representing the balance of the cash surrender value

of the two policies, also should be excluded from his 1955 income as income reportable in 1954." The Government's answer in such proceeding contained no counterclaim.

After a trial before Judge Weber, the district court held, in *Kappel v. United States*, 369 F. Supp. 267, 276 (W.D. Pa. 1974), that the $15,365.06 of income was not taxable to the petitioners in 1955 because it "should have been included in the plaintiff's 1954 income tax return." The district court's decision became final on November 4, 1974.

Subsequently, a revenue agent was assigned to do a follow-up audit of the Kappels' 1954 tax return. Upon learning that such return had been destroyed by the IRS, such agent took the following unsuccessful steps to obtain a copy of their 1954 tax return or documents from which such return could be reconstructed: (1) He requested a transcript of account from the Mid-Atlantic Service Center in Philadelphia; (2) the petitioners and their representative were requested to supply a copy of the 1954 tax return; (3) a search was conducted for the revenue agents' reports (RAR) covering such year; and (4) a summons was issued to William D. Kappel, executor of the Estate of William J. Kappel, which requested a copy of the Kappels' 1954 tax return, a copy of the RAR for 1954, and any other document which showed their reported taxable income for 1954.

After the revenue agent consulted with regional counsel, a deficiency notice for 1954 was issued on November 3, 1975, in which the $15,365[3] of annuity income was taxed at the marginal rate of 89 percent, resulting in a deficiency of $13,675.

After this case was commenced, the Commissioner requested the petitioners to produce any documents possessed by them relating to the Kappels' 1954 tax return. As a result of such request, the petitioners produced documents showing that there had been an earlier audit of the Kappels' returns for 1954 and 1955, that small adjustments had been proposed for both years, and that an RAR had been prepared in 1956 by Revenue Agent P. H. Friedman. The petitioners also produced a partial copy of his RAR. As a result of a request to the Department of Justice for its records relating to the district court action, the Commissioner obtained a complete copy of such RAR and a

---

[3]In computing the deficiency, the amount was rounded to the nearest dollar.

document showing that the Kappels had agreed to the adjustments proposed therein. The computation of the Kappels' income for 1954 set forth in the RAR shows that the annuity income which is the subject of the notice of deficiency in this case was taxable at the 89-percent rate.

## OPINION

At the outset, we must decide whether in 1975, the Commissioner had any grounds for claiming a deficiency in the Kappels' Federal income tax for 1954. It is agreed that the usual statute of limitations had run on any assessment for 1954 taxes. However, here, the Commissioner is relying on sections 1311 through 1314 to mitigate the statute of limitations, and he has the burden of proving their requirements have been satisfied. E.g., *United States v. Rushlight*, 291 F.2d 508, 514 (9th Cir. 1961); *Taxeraas v. United States*, 269 F.2d 283, 289 (8th Cir. 1959); *MacDonald v. Commissioner*, 17 T.C. 934, 940 (1951), and cases cited therein. For the Commissioner to prevail, he must show that there was a determination as defined in section 1313(a)(1),[4] that there has occurred one of the circumstances of adjustment described in section 1312, that on the date of the determination, correction of the effect of the error was prevented by the operation of any law or rule of law (sec. 1311(a)), that a notice of deficiency was issued within 1 year of the determination (sec. 1314(b)), and that if the adjustment resulted in a deficiency, the taxpayer maintained an inconsistent position which was adopted in the determination (sec. 1311(b)). See *Birchenough v. United States*, 410 F.2d 1247, 1249–1250 (Ct. Cl. 1969); *Yagoda v. Commissioner*, 39 T.C. 170, 179–180 (1962), affd. 331 F.2d 485 (2d Cir. 1964), cert. denied 379 U.S. 842 (1964); *Chertkof v. Commissioner*, 66 T.C. 496, 499 (1976).

It is clear that the decision by the district court in *Kappel v. United States, supra,* which became final on November 4, 1974, is a determination within the meaning of section 1313(a)(1), that the statute of limitations under section 6501 bars assessment and collection of the deficiency herein unless the mitigation provisions are applicable, and that the deficiency notice, which was

---

[4](a) DETERMINATION.—For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

dated November 3, 1975, was issued within 1 year of the determination. However, the petitioners suggest that there has not occurred any of the circumstances of adjustment described in section 1312 and that the Kappels did not maintain an inconsistent position within the meaning of section 1311(b).

Section 1312(3)(A) provides:

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \* \* \* \*

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

(A) ITEMS INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item \* \* \* with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year \* \* \*

As a result of the determination, the $15,365.06 was excluded from the Kappels' gross income for 1955. They paid tax with respect to such amount, and such item of income was erroneously omitted or excluded from their income for 1954. Thus, all the conditions of section 1312(3)(A) did take place in this case.

Citing *Kent Homes, Inc. v. Commissioner*, 455 F.2d 316 (10th Cir. 1972), revg. 55 T.C. 820 (1971), *G-B, Inc. v. United States*, 302 F. Supp. 851 (D. Colo. 1969), affd. per curiam 422 F.2d 1035 (10th Cir. 1970), and the dissenting opinion of Judge Skelton in *Birchenough v. United States*, 410 F.2d at 1252, the petitioners argue that payment of tax induced by a deficiency notice is not the kind of payment contemplated by section 1312(3)(A). However, both *Kent Homes, Inc., supra* at 318 n. 4, and *G-B, Inc., supra* at 853–854, recognized that payment of a deficiency followed by a refund suit in the district court is the kind of situation contemplated by section 1312(3)(A), and the majority in *Birchenough* reached a similar conclusion with respect to payment of a deficiency followed by an action in the Court of Claims. 410 F.2d at 1251–1252. In addition, the regulations expressly adopt such position (sec. 1.1312–3(a)(2) example (*1*)(ii), Income Tax Regs.), and there are numerous cases in which payment of the deficiency followed by a refund suit has constituted a sufficient payment of tax to qualify under section 1312(3)(A). E.g., *Karpe v. United States*, 335 F.2d 454, 455–457 (Ct. Cl. 1964), cert. denied 379 U.S. 964 (1965); *Yagoda v. Commissioner, supra; Cory v. Commissioner*, 29 T.C. 903 (1958),

affd. 261 F.2d 702 (2d Cir. 1958), cert. denied 359 U.S. 966 (1959). Accordingly, the petitioners' argument is rejected.

Section 1311(b) provides in part:

> (b) CONDITIONS NECESSARY FOR ADJUSTMENT.—
> (1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if—
>
>      *      *      *      *      *      *     · *
>
> (B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made, and the position * * * maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

Since the Commissioner seeks a deficiency for 1954, he must show that the Kappels maintained a position in the district court proceeding relating to their tax liability for 1955 which was inconsistent with the erroneous omission of the annuity income in 1954, and that such position was adopted in the determination by the district court. The Commissioner has sustained his burden in this respect. See *Birchenough v. United States*, 410 F.2d at 1249–1250; *Karpe v. United States*, 335 F.2d at 460–462; *Yagoda v. Commissioner*, 39 T.C. at 180–181; *Cory v. Commissioner*, *supra*.

When the provisions now contained in sections 1311 through 1314 were enacted, the Senate Finance Committee report stated:

> This section of the bill provides an equitable solution of certain classes of income-tax problems, now very numerous, which have caused much hardship to taxpayers and great difficulty to the Commissioner, the Board of Tax Appeals, and the courts. * * *
>
>      *      *      *      *      *      *     *
>
> In each case, under existing law, an unfair benefit would have been obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. Such resort to the statute of limitations is a plain misuse of its fundamental purpose. The purpose of the statute of limitations to prevent the litigation of stale claims is fully recognized and approved. *But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute.* * * * [S. Rept. 1567, 75th Cong., 3d Sess. (1938), 1939–1 C.B. (Part 2) 779, 814–815; emphasis supplied.]

The facts of this case present the classic situation for

application of the mitigation provisions. The Kappels did not report certain annuity income in either 1954 or 1955. In good faith, the Commissioner sought to tax such unreported income in 1955. Even though the Kappels had not included the item in their 1954 income, they contended in the district court that such item was not income in 1955 because it was income in 1954. In *Kappel v. United States*, 369 F. Supp. at 276, the district court agreed with the Kappels, holding that the item was not income in 1955 because it was income in 1954, and that it "should have been included in the plaintiff's 1954 income tax return." In the light of such circumstances, there can be no reasonable dispute over the fact that the Kappels have maintained a position which was inconsistent with their erroneous treatment of the annuity income in another taxable year, and that such position was adopted in the determination. *Birchenough v. United States, supra; Karpe v. United States, supra; Chertkof v. Commissioner, supra.*

Yet, the petitioners argue that they have consistently maintained that the annuity income was taxable in 1954, and not 1955, and that the Commissioner is being inconsistent since he first argued it was income in 1955 and now argues it is income in 1954. In the first place, it is clear that the Commissioner's argument, if made in good faith and if internally consistent, is irrelevant where it is not adopted in the determination and the adjustment under section 1311 is a claim for a deficiency. Sec. 1311(b)(1); secs. 1.1311(a)–1(b), 1.1311(b)–1(c)(1), Income Tax Regs.; *Birchenough v. United States*, 410 F.2d at 1251. In the second place, the petitioners misconstrue the requirement of section 1311(b)(1): The test is not whether the position maintained by them in the district court proceeding is consistent with the position maintained by them in this case; the test is whether the position maintained by them with respect to the open year is inconsistent with their treatment of the item in the closed year. In both the district court and here, the petitioners have been consistent in their argument, but what is important is that their argument is not consistent with their treatment of the annuity income in 1954.

In support of their argument, the petitioners cite *G-B, Inc. v. United States, supra,* and *Kent Homes, Inc. v. Commissioner, supra,* but neither case supports their position. In *G-B, Inc.*, the taxpayer treated certain transactions which occurred in 1959 as

nontaxable under section 351. The IRS, on the other hand, contended that the transactions did not meet the requirements of such section and issued a deficiency notice for 1960. The taxpayer paid the deficiency and brought suit in the district court for a refund. In such action, the taxpayer's primary position was that the transactions in 1959 met the requirements of section 351. In the alternative, it argued that if section 351 did not apply, any gain was realized in 1959. The taxpayer moved for summary judgment, and such motion, which was unopposed by the Government, was granted without the district court setting forth the basis for its action.

Subsequently, relying upon sections 1311 through 1314 to mitigate the statute of limitations, the Commissioner determined a deficiency for 1959. Again, the taxpayer paid the deficiency and filed suit in the district court. The district court held that it had not adopted in its earlier decision an inconsistent position maintained by the taxpayer. The district court's decision was affirmed by the Tenth Circuit. 422 F.2d 1035 (1970). The courts treated the taxpayer's presentation of its alternative argument as merely calling those facts to the attention of the court in the first case, and clearly, if section 351 applied, the taxpayer's treatment of the transactions in 1959 was correct. Moreover, because the taxpayer maintained alternative positions in the first case, the courts refused to find that the first decision was based on an adoption of a position which was maintained by the taxpayer and which was inconsistent with the taxpayer's treatment of the transactions. No similar factual situation exists in the case now before us, and there is no uncertainty over the fact that the district court adopted a position which was maintained by the Kappels and which was inconsistent with their treatment of the annuity income in 1954. See *Commissioner v. Goldstein's Estate,* 340 F.2d 24 (3d Cir. 1965), affg. a Memorandum Opinion of this Court; *Estate of SoRelle v. Commissioner,* 31 T.C. 272 (1958).

In *Kent Homes,* the Commissioner determined a gain was realized in 1958 and issued a notice of deficiency for such year. The taxpayer, who contended that the gain was not realized until 1963, paid the deficiency and filed for refund in the district court. In *Kent Homes, Inc. v. United States,* 279 F. Supp. 650 (D. Kan. 1967), the district court held that the gain was not realized in 1958 because it was realized in 1959. Relying on sections 1311

through 1314, the Commissioner then issued a deficiency notice for 1959. The taxpayer filed a petition with this Court and argued that the statute of limitations was not mitigated because the district court had not adopted a position maintained by it. The Tax Court held that the district court did adopt a position maintained by the petitioner. 55 T.C. at 831–834. In reversing the Tax Court, the Tenth Circuit held that under these facts, the district court had not adopted a position maintained by the taxpayer. 455 F.2d at 319. However, the Tenth Circuit did not disagree with the Tax Court's formulation of the legal principles; it only held that as a factual matter, the district court did not adopt a position maintained by the petitioner. See *Chertkof v. Commissioner*, 66 T.C. at 503–509. Here, it is clear that the district court adopted the petitioners' position that the annuity income was not income in 1955 because it was income in 1954.

Next, the petitioners contend that since the Commissioner has the burden of proving that sections 1311 through 1314 are applicable, he must produce the Kappels' 1954 tax return or reproduce it by secondary evidence, and that the Commissioner has failed to carry such burden because the only evidence submitted by him on this point is unauthenticated and inadmissible hearsay. The Commissioner, on the other hand, does not dispute that he bears the burden of proof with respect to the applicability of sections 1311 through 1314; he merely argues that such burden does not include proving the contents of the Kappels' 1954 tax return and that, in fact, the petitioners have the burden of disproving the deficiency determined by him.

Section 1311(a) provides:

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

Section 1314(a) explains how the adjustment is to be computed.[5]

---

[5] (a) ASCERTAINMENT OF AMOUNT OF ADJUSTMENT.—In computing the amount of an adjustment under this part there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. The amount of the tax previously determined shall be the excess of—

(1) the sum of—

(A) the amount shown as the tax by the taxpayer on his return (determined as provided in

Section 1314(b) states the procedures to be used in assessing and collecting any increase in tax resulting from the adjustment as follows:

(b) METHOD OF ADJUSTMENT.—The adjustment authorized in section 1311(a) shall be made by assessing and collecting * * * the amount thereof in the same manner as if it were a deficiency determined by the Secretary with respect to the taxpayer as to whom the error was made * * * for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years. * * *

When these sections are read together, it is clear that the adjustment under section 1314 is a matter of mathematical computation to be done in the manner specified therein, and not a condition precedent to applying the mitigation provisions. The "if" clause of section 1311 (a) clearly sets forth the conditions precedent to invoking the mitigation provisions, and the "then" clause of section 1311(a) indicates that once those conditions are met, an adjustment under section 1314 is to be made.

In addition, section 1314(b) expressly states that the adjustment is to be treated as a deficiency. When the predecessor of such provision was enacted, the legislative history makes clear that Congress intended to incorporate all of the rules and procedures generally applicable to deficiency determinations. The Senate Finance Committee report stated:

* * * [Sec. 1314(b)] prescribes the method of adjustment. If the amount of the adjustment * * * represents an increase in tax, it is to be considered as a deficiency for the taxable year with respect to which the error was made * * *. The amount of the adjustment considered as a deficiency * * * will bear interest to the extent provided by the internal-revenue laws for deficiencies * * * for the taxable year with respect to which the error was made. Likewise if the amount of the adjustment represents an increase in tax, any appropriate additions to the tax are also to be assessed and collected. By considering the amount of the adjustment as a deficiency * * * [sec. 1314(b)] permits the utilization of the procedural devices applicable to assessment, collection, refunding, etc., of deficiencies * * * [S. Rept. 1567, 75th Cong., 3d Sess. (1938), 1939–1 C.B. (Part 2) 779, 817.]

---

section 6211(b)(1), (3), and (4), relating to the definition of deficiency), if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
(2) the amount of rebates, as defined in section 6211(b)(2), made.

Similarly, the Conference Committee report stated:

If the recomputation results in an increase over the tax previously determined, such increase is considered as a deficiency determined by the Commissioner and may be assessed and collected under the established procedure for the assessment and collection of deficiencies. The taxpayer may contest the deficiency before the Board or if he chooses may pay the deficiency and later file suit for refund. * * * [Conf. Rept. 2330, 75th Cong., 3d Sess. (1938), 1939–1 C.B. (Part 2) 817, 836.]

Thus, an analysis of the statutory provisions and a review of the legislative history both indicate that once the Commissioner has proved that the mitigation provisions of sections 1311 through 1314 are applicable, a deficiency determined by him under section 1314 is to be treated in the same manner as any other such deficiency, including the rule that the petitioner has the burden of disproving it. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933).

Moreover, such conclusion is consistent with the established law in other similar situations. For example, when the Commissioner is required to and does prove fraud to avoid the applicability of the statute of limitations, the petitioner then has the burden of disproving any deficiency determined by the Commissioner. See *Bryan v. Commissioner*, 209 F.2d 822 (5th Cir. 1954), affg. a Memorandum Opinion of this Court, cert. denied 348 U.S. 912 (1955); *Harris v. Commissioner*, 174 F.2d 70 (4th Cir. 1949), affg. per curiam a Memorandum Opinion of this Court; see also *Birchenough v. Commissioner*, 410 F.2d at 1249–1250; *Karpe v. United States*, 335 F.2d at 458–459; *Yagoda v. Commissioner*, 39 T.C. at 179–180; *Chertkof v. Commissioner*, 66 T.C. at 499.

The petitioners rely upon *Granquist v. Harvey*, 258 F.2d 599 (9th Cir. 1958), and *Corson v. Commissioner*, T.C. Memo. 1965–214, affd. per curiam 369 F.2d 367 (3d Cir. 1966), as authority for their argument. However, *Granquist v. Harvey* merely stands for the proposition that the Commissioner must produce the taxpayer's return or prove its contents by secondary evidence where the issue is whether the taxpayer filed a fraudulent return. Similarly, *Corson v. Commissioner* held that the Commissioner did not satisfy his burden of proving fraud by clear and convincing evidence when he relied on a revenue agent's report which was only admitted in evidence for the limited purpose of showing how the deficiency was computed. In both cases, the

burden of proving fraud was on the Commissioner and proof of the contents of the tax return was necessary for him to carry that burden. Clearly, these cases have no applicability here because there is no issue of fraud and the petitioners have the burden of proof once the Commissioner has established that the mitigation provisions apply. In conclusion, we hold that the Commissioner has carried his burden of proving that sections 1311 through 1314 are applicable, that the petitioners have the burden of disproving the deficiency determined by him, and that since they offered no evidence to refute the deficiency, they have failed to carry their burden.[6]

The petitioners' final argument is that the deficiency in this case is barred by rule 13(a) of the Federal Rules of Civil Procedure, which provides:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. * * *

According to the petitioners, the deficiency should have been asserted in the district court proceeding as a compulsory counterclaim, and since the Government failed to do so, the claim is forever barred. Such argument is without merit.

A necessary condition to invoking the mitigation provisions is that there be a determination. A "determination" is defined by section 1313(a) to include a decision of a court of competent jurisdiction which has become final. Sec. 1313(a)(1); see secs. 1311(a), 1312(3)(A); secs. 1.1311(a) 1, 1.1313(a) 1(a), Income Tax Regs. The rationale behind such requirement is that it cannot be ascertained whether a party successfully maintained an inconsistent position until there is a determination which adopted such inconsistent position. As stated by the Senate Finance Committee report:

Inasmuch as an adjustment should not be made until the inconsistent position asserted by the taxpayer or the Commissioner has been successfully

---

[6]In view of that conclusion, we do not reach the issue of the admissibility of the RAR, but there is no doubt that under the Federal Rules of Evidence that it was admissible. See rules 901, 801(d)(2), 803(5), (8), (16), (24), Fed. R. Evid. In addition, although the petitioners never questioned whether the deficiency was determined in an arbitrary manner, the evidence is sufficient to show that the Commissioner computed the deficiency in a reasonable manner under the circumstances.

maintained, * * * [section 1311] is not operative until there is a final "determination" which gives authoritative sanction to the inconsistent action. * * * [Section 1313] describes the types of determinations which are prerequisite to the operation of this section. [S. Rept. 1567, 1939–1 C.B. (Part 2) at 815.]

Similarly, the Conference Committee report stated:

* * * [These sections provide] for mitigation of some of the inequities under the income-tax laws caused by the statute of limitation and other provisions which now prevent equitable adjustment of various income-tax hardships. * * *

The * * * amendment would work as follows: It becomes operative if (1) after the effective date of this Act, there is a final "determination" under the income-tax laws which gives authoritative sanction to the inconsistent position presently maintained by the taxpayer or the Commissioner and indicates that the previous treatment of the item was erroneous under the applicable provisions of the internal-revenue laws; and (2) correction of the effect of such error is prevented by the operation of one or more provisions of the internal-revenue laws * * *

The types of final determinations prerequisite to the operation of the amendment are described in * * * [sec. 1313(a)]. * * * [Conf. Rept. 2330, 1939–1 C.B. (part 2) at 835.]

The petitioners have referred to no authority supporting their position, and we have found none. Moreover, when the Government filed its answer in the district court proceeding, it had no grounds for filing a counterclaim for a deficiency for 1954. At that time, no one knew what decision the district court would reach with respect to whether the annuity income was taxable to the Kappels in 1955, and until the district court reached a final decision on that issue, there could be no determination adopting their position with respect to 1955. Without such a determination, the Government had no basis for claiming a deficiency with respect to 1954. In addition, even when the district court's decision for 1955 did become final, the Commissioner was required to issue a notice of deficiency so as to give the taxpayer an opportunity to litigate the matter in the Tax Court, and the Commissioner could not assess a deficiency before the expiration of the time for filing a petition in this Court. Consequently, it is altogether clear that the Government could not have counterclaimed for a deficiency with respect to 1954 and that its failure to do so is no bar in these proceedings.

*Decision will be entered for the respondent.*